Submitted on brief January 13, reversed February 1, rehearing
denied February 29, 1916.

## LOMBARD *v.* KIES.

### (154 Pac. 757.)

**Vendor and Purchaser—Option to Purchase Real Estate—Construction.**

1. Plaintiff's option to purchase real estate for which he paid
$1,000, provided that upon defendant vendor's procuring good title
by deed or foreclosure of a purchase contract plaintiff should make
the additional payment on the premises of $4,000 and should pay
the balance of the purchase price in certain installments, including
the assumption of a prior mortgage. Upon payment of the $4,000,
a supplemental agreement was entered into whereby plaintiff might
anticipate the contract by paying for any part of the tract which
he should specify in writing, at stipulated prices per acre for the
different kinds of land, for which defendant was to give plaintiff
a good and sufficient deed. *Held*, that the agreement was a unilateral
option under which plaintiff, upon complying with its terms, was
entitled to a deed to such portion of the land as he might select,
free from such prior mortgage.

**Vendor and Purchaser—Option to Purchase Land—Partial Exercise—
Supplemental Agreement—Breach—Rescission.**

2. Where plaintiff orally demanded a portion of the tract under
the terms of the supplemental agreement, but did not specify the
land in writing, he could not have rescission of the entire contract
on the ground that defendant refused to convey free from the
prior lien, since, having himself failed to comply with the terms
of the agreement, he cannot complain of defendant's default.

**Vendor and Purchaser—Option to Purchase Land—Good Title—New
Highway—Encumbrance—Purchase.**

3. Where the parcel plaintiff desired to purchase under such
supplemental agreement was a 40-acre tract containing a dwelling
which plaintiff desired for a summer residence, the location of a
new highway through the tract within 50 feet of the dwelling after
the option contract had been made and partially carried out by
plaintiff's $4,000 payment entitled plaintiff to a rescission of the
contract, since the establishment of the highway unknown to the
parties, which rendered the premises unsuitable for the purposes
intended by plaintiff, was an encumbrance breaching defendant's
agreement.

[As to specific performance of optional contracts, see note in
Ann. Cas. 1913A, 362.]

From Washington: JAMES A. EAKIN, Judge.

In Banc.    Statement by MR. JUSTICE BENSON.

This is a suit by B. M. Lombard against M. B.
Kies, receiver of the Commercial Bank of Vancouver,
Washington. The facts are as follows:

On June 28, 1912, M. B. Kies, as receiver of the Commercial Bank of Vancouver, gave to F. C. Malpas an option to purchase a tract of 476 acres of farm land, the option (omitting the description of the land) reading as follows:

"Know all men by these presents that M. B. Kies, as receiver of the Commercial Bank of Vancouver, hereinafter called party of the first part, for and in consideration of the sum of one thousand dollars ($1,000) to him in hand paid, does hereby bargain, give, and grant to F. C. Malpas, hereinafter called party of the second part, for the period hereinafter provided, the sole, exclusive, and irrevocable right and privilege of purchasing that certain described tract or parcel of land, situate in the county of Washington, State of Oregon, to wit, * * upon the terms and at the price hereinafter provided. It is understood between the parties hereto that the party of the first part has instituted a proceeding in foreclosure against Paul H. Reimers and Grace Reimers, his wife, and B. M. Lombard and Caroline S. Lombard, his wife, for the foreclosure of a certain contract of purchase covering the above-described premises, made and entered into between the party of the first part and said Paul H. Reimers and Grace Reimers, his wife, on March 16, 1911, which foreclosure suit is pending in the Circuit Court of Oregon for Washington County. The party of the first part agrees to carry on and prosecute said proceeding to a successful final determination and to procure title to all of said described premises in himself free from the claims of any and all of said defendants. In case the party of the first part shall procure a deed to said premises he shall immediately notify party of the second part thereof in writing, and the party of the second part shall, within 15 days after such notification, make an additional payment upon said premises in the sum of $4,000, and shall pay the balance of the purchase price of said premises as follows: One third thereof one year from the date of acquiring deed; one third thereof one year later; one

third thereof one year thereafter: Provided, however, that the payment falling due in the year in which it becomes necessary to pay Balfour, Guthrie & Co.'s mortgage shall not be then made, but shall be made one year after the date of the last payment as above provided: Provided said mortgage is paid by the party of the second part when due. In case deed is not procured, but the party of the first part procures title in said foreclosure proceedings by strict foreclosure, he shall give notice in writing to the party of the second part of the fact of procuring title, and the said payment of $4,000 shall be made within fifteen days thereafter, and subsequent payments shall be made thereafter as above provided. The total purchase price shall be the amount which shall be decreed in said foreclosure proceeding to be due the plaintiff against the defendants, Paul H. Reimers and Grace Reimers, including costs, disbursements, and interest and attorney's fees, and the further amount of $16,320.00, with interest thereon at the rate of 6 per cent per annum from and after May 1, 1912, and the assumption by the party of the second part of the certain mortgage for $7,000 in favor of Balfour, Guthrie & Co., now a first lien upon said premises. It is further understood that the payment of $1,000 herein acknowledged shall apply as part of said purchase price in case all of the purchase price shall be paid by the party of the second part. In the event that the party of the first part shall be unable to carry out this agreement or shall for any reason fail to carry out the same, the party of the second part shall, at his option, be entitled on demand to the return of said sum of $1,000 to be paid to him by the party of the first part, but the party of the first part shall not be bound to complete the terms of this contract in case said property is redeemed within the time limited by law. It is understood and agreed that the option herein granted shall exist in favor of the party of the second part until the expiration of 15 days after written notice by party of the first part to party of the second part of the deed or obtaining of title by decree of strict foreclosure, as above provided. It is further understood and agreed that the agreements

herein contained shall bind the heirs, assigns, personal representatives, and successors of both of the parties hereto.''

On December 4, 1912, M. A. Zollinger, having taken an assignment of the option from Malpas, paid $4,000 thereon, and took from Kies a receipt and supplemental contract reading thus:

"Portland, Oregon, December 4, 1912.

"The undersigned, M. B. Kies, receiver of the Commercial Bank of Vancouver, Washington, hereby acknowledges receipt from M. A. Zollinger of the sum of four thousand dollars ($4,000) paid to said receiver in accordance with the terms of the certain option and written agreement dated June 28, 1912, between the undersigned and F. C. Malpas, covering a certain tract of land in the counties of Washington and Yamhill, in the State of Oregon, known as the 'Aldrich place,' which option and agreement has been assigned to the said M. A. Zollinger by the said F. C. Malpas, said payment being made in the manner following: $3,666.35 thereof in cash, and $333.65 thereof by receipt of B. M. Lombard for costs, expenses, disbursements, and attorney fees advanced by the said B. M. Lombard on behalf of said M. B. Kies, receiver, in the foreclosure suit of said *M. B. Kies, Receiver,* v. *Paul H. Reimers et al.;* and whereas, by the terms of said option it is agreed that the said receiver shall prosecute said suit to a successful final determination and to procure title to all of said premises in himself free from the claims of any and all of the defendants therein, and the right of the defendants to appeal from the decree rendered in said suit has not expired: It is further agreed and understood between said receiver and said M. A. Zollinger that in case an appeal shall be perfected in said suit, the said receiver shall and will, upon the request of the said M. A. Zollinger or his assigns, return to the said M. A. Zollinger the amount paid upon said premises, to wit, the sum of five thousand ($5,000.00) dollars, excepting said sum of $333.65. In consideration of the premises and of the payment at this time of

the amounts above specified, and in consideration of payment of one dollar to said receiver by said M. A. Zollinger, receipt of which sum is hereby acknowledged, said receiver further agrees that said M. A. Zollinger, his heirs and assigns, shall have the right and privilege of paying upon the said contract dated June 28, 1912, any sum or sums he may desire at any time or times before the maturity thereof, and upon such payment being made he shall be entitled to a good and sufficient deed of this receiver conveying such portion of the premises as he shall in writing specify upon payment, as follows: For uncleared land upon said premises $50.00 per acre; for cleared land $80.00 per acre, except for the governmental subdivision of forty (40) acres upon which the dwelling-house stands, which shall be conveyed, as aforesaid, upon the payment of $120.00 per acre. And whereas, the said option provides that the total price of said premises shall be the amount decreed in certain foreclosure proceedings, plus an additional amount therein specified, and the amount decreed to be due plaintiff, M. B. Kies, as receiver in said foreclosure proceedings, by oversight and omission failed to include the sum of $325.00, with interest thereon at the rate of 6 per cent per annum from and after May 15, 1912, it is understood that said last-named sum shall, for the purpose of said option, be added to the amount of the decree actually rendered in favor of the plaintiff in said foreclosure proceedings, and the consideration or purchase price of said premises shall be increased in said sum."

Subsequently Zollinger assigned the contracts to plaintiff, who, being desirous of making full payment for the 40-acre tract upon which the house stood, in accordance with the terms of the supplemental contract above set out, made a proposition to defendant, though not in writing, to pay therefor as provided in the event that he could have the tract released from the lien of the Balfour, Guthrie & Co. mortgage. The parties were not able to secure a release from the mort-

gagees without the payment of the entire mortgage debt, and, as the defendant was unable or unwilling to do this, the deed to the 40-acre tract was never executed.

On April 5, 1912, after the necessary preliminaries had been observed the County Court of Washington County made and entered an order establishing a county road which, according to the survey, would run practically through the dooryard and within 50 feet of the dwelling-house on the 40-acre tract above mentioned. Neither plaintiff nor defendant had any actual knowledge of the establishment of such highway until a few days before the commencement of this suit, at which time they together visited the premises, and found the county's employees busily engaged in grading the road through the property. Shortly thereafter plaintiff began this suit to rescind the contract and recover the payments made thereon, alleging two breaches thereof. (1) The refusal of defendant to convey the 40-acre tract free from the encumbrance of the Balfour, Guthrie & Co. mortgage; and (2) the establishing of the public road so near the dwelling-house as to render the premises unfit for the purpose for which he was purchasing it, that is, for a suburban home for his family, and that therefore the defendant will be permanently prevented from giving him a good conveyance free from encumbrance.

Defendant, answering, denies the alleged breaches of the contract, and by affirmative answer seeks a strict foreclosure of the same. From a decree in favor of plaintiff, defendant appeals.

Submitted on briefs without argument under the proviso of Rule 18 of the Supreme Court: 56 Or. 622 (117 Pac. xi).          REVERSED. DECREE RENDERED.

For appellant there was a brief over the name. of *Messrs. Kollock & Zollinger.*

For respondent there was a brief over the names of *Messrs. Flegel, Reynolds & Flegel* and *Mr. H. L. Parcel.*

MR. JUSTICE BENSON delivered the opinion of the court.

The entire problem in this case is based upon the question as to whether or not there have been such breaches of the contract as to entitle plaintiff to rescind.

1, 2. It is obvious from an examination of the writing that the agreement is nothing more or less than a unilateral option to buy in which the vendee may or may not at his own pleasure make the payments specified therein: *Scott* v. *Merrill's Estate,* 74 Or. 568 (146 Pac. 99), and cases there cited. He did not assume the Balfour, Guthrie & Co. mortgage; for the time had not arrived when he would be called to elect as to its assumption. Reading the supplemental contract in the light of this conclusion, it follows that if the plaintiff complied with the terms thereof in seeking a deed to the 40-acre tract, he was entitled to a good and sufficient deed free from the encumbrance of the mortgage. However, it is conceded that plaintiff never specified in writing the land that he desired to have conveyed, and therefore, having failed to comply with the terms of the contract himself, he is in no position to complain of a default upon the part of his adversary.

3. Plaintiff's second contention presents greater difficulty. There is much diversity of opinion in the authorities as to whether or not a public highway is such an encumbrance as to constitute a breach of the covenants in a conveyance. Many of those which

agree upon the main point differ widely as to the reasons which lead to the common conclusion. These authorities are quite fully collated in *Sandum* v. *Johnson,* 122 Minn. 368 (142 N. W. 878, Ann Cas. 1914D, 1007, 48 L. R. A. (N. S.) 619), and in that opinion the result is stated in this language:

"While the decisions are conflicting, the clear weight of both argument and authority is that the existence of a known rural highway does not constitute a breach of the usual covenants in a deed conveying agricultural land."

This court has held that the existence of an open, notorious and visible encumbrance upon land contracted to be conveyed, such as a railroad in operation, is not an encumbrance which renders the owner's title unmarketable and assigns as the reason for so holding that it is presumed that in fixing the purchase price the existence of the encumbrance was taken into consideration: *Barnum* v. *Lockhart,* 75 Or. 528 (146 Pac. 975); *Wetherby* v. *Griswold,* 75 Or. 468 (147 Pac. 388). The inevitable logic of this deduction is that, if the establishment of the highway is unknown to the contracting parties, the question of its effect upon the agreement depends upon the facts of the individual case, especially in a suit to rescind; for, if the prospective highway renders the premises unsuitable for the purposes intended by the vendee, the discovery thereof presents a condition which was not in the contemplation of the parties, and the vendee ought not to be compelled to purchase something different from that for which he bargained. In the case at bar the land was about 25 miles from Portland, where plaintiff resided. He was purchasing the land for the special purpose of making the 40-acre tract a summer home for his family. The possibility of having a dusty country

road within 50 feet of his dwelling-house, rendering habitation therein disagreeable and the passing of automobiles and other vehicles so near his home bringing added dangers into the lives of his children, presents a condition not contemplated at the time of entering into the option agreement and entitled him, we think, to a decree of rescission. A decree will therefore be entered here annulling the contract, and a judgment in favor of plaintiff as prayed for in his complaint, except that the taxes paid by him should be offset by his occupation of the premises from December 4, 1913, and that the moneys expended by him in putting in a crop should be eliminated, since, so far as the record discloses, he harvested and derived all the benefits from such crop. It appears from the record that pending litigation the property was leased for the crop season of 1914, at a rental of $350, of which $175 was deposited in court with the lease, by agreement of the parties, to abide the decision of the court. This money and the lease are to be withdrawn by the defendant, who will be given four months from the entry of the mandate herein in the lower court in which to pay the sums so adjudged to be paid, and plaintiff decreed to have a lien upon the premises for such payment.

REVERSED. DECREE RENDERED.

MR. JUSTICE EAKIN took no part in the consideration of this case.