Argued October 19, affirmed, modification authorized November 20, 1917, opinion further modified and rehearing denied January 8, 1918.

## HORNBECK *v.* SMITH.[*]

(168 Pac. 633, 419.)

**Vendor and Purchaser—Fraud—Evidence—Sufficiency.**

1. Evidence *held* insufficient to show fraud on the part of defendants who contracted to convey land to plaintiff.

**Vendor and Purchaser—Title—Encumbrances—Public Highway.**

2. The existence of a visible and known physical encumbrance upon land contracted to be conveyed, such as a public highway, is not such

———

[*]On right to rescind or abandon contract because of other party's default, see note in 30 L. R. A. 33.

As to necessity for placing *in statu quo* on rescission of contract for sale of land, see note in 30 L. R. A. 66.        REPORTER.

an encumbrance as renders the owner's title unmarketable; it being presumed that in fixing the purchase price the existence of such an easement was considered by the parties.

**Vendor and Purchaser—Rescission—Burden of Proof—Fraud.**

3. Where the purchaser sought to rescind a contract to purchase real estate on the grounds of fraudulent representations, he had the burden of pleading and proving all the operative elements of fraud.

> [As to burden of proving fairness of transaction, see note in Ann. Cas. 1912A, 704.]

**Vendor and Purchaser—Rescission—Duties of Parties.**

4. A vendee desiring a rescission of a contract to purchase land must endeavor to restore the *status quo*, and to make some recompense for profits derived under the contract.

**Vendor and Purchaser—Time for Rescission.**

5. In order to secure a rescission of a contract to purchase land, the vendee must act promptly upon discovery of the alleged discrepancy in the number of acres actually conveyed.

From Marion: WILLIAM GALLOWAY, Judge.

Department 1.   Statement by MR. JUSTICE BEAN.

In April, 1914, the defendants, J. P. Smith, B. M. Smith, and J. E. Smith, partners as Smith Brothers, were the owners of about 177 acres of land in the northern part of Marion County. About 147 acres of this tract are located east of the Willamette River and the remaining 30 acres, known as the island, lie west of the main channel of the river. This land was placed in the hands of Mr. Ferguson, a real estate agent at Newberg, for sale for $16,000. He initiated negotiations with plaintiff Hornbeck for the sale of the same, but as the latter did not desire any portion of the island a final proposition was accepted leaving it out and embracing only the 147 acres at the price of $15,-400. The contract of sale was executed April 1, 1914, describing the land as two distinct parcels, title in fee simple to be conveyed upon payment of the purchase price as follows: $3,000 in cash, which was paid; $1,500 on the first day of November, 1914, and $1,500

on the first day of November in each year thereafter until the purchase price was fully paid, with interest at six per cent per annum on deferred payments. Hornbeck was to pay all taxes for the year 1914, and thereafter. Upon the execution of the agreement Hornbeck was to have possession of 20 acres of the land, and of the whole thereof on October 1, 1914, at the expiration of a certain lease in which he was substituted as lessor. The contract provided that in case of failure to make any of the payments, or the interest thereon, at the time provided therein, which was made the essence of the agreement, then Hornbeck should forfeit all his rights to the premises and the Smiths might re-enter the same and retain all payments made.

On February 7, 1916, J. P. Smith, who had succeeded to the interest of his brothers in the land, brought an action against Hornbeck for the possession thereof. Hornbeck answered and also filed a cross-complaint in equity to restrain the action at law and prayed for the cancellation of the contract of sale and for the return of the $3,000, the first payment made upon the agreement, and $434, interest paid December 11, 1914. In his cross-complaint plaintiff Hornbeck set forth the contract and alleged, in substance that there was a deficiency of about 20 acres in the tract purchased; that at the time of the execution thereof and ever since neither of the vendors owned or possessed a parcel of said land consisting of about 12 acres and therefore cannot comply with the terms of the contract; that plaintiff was not familiar with the location of that portion of the premises and relied upon the representations of the Smiths; that they greatly exaggerated the value of the farm and falsely represented the proceeds that could be derived from the cultivation thereof.

Defendants J. P. Smith, B. M. Smith and J. E. Smith, who were made parties defendants upon the application of plaintiff, answered the cross-complaint and admitted the execution of the contract. They denied any misrepresentations or fraud on their part and averred that plaintiff failed to pay any of the principal due on April 1, 1914, or any interest, except $434 paid December 11, 1914, therefore, prior to the action defendant J. P. Smith declared the contract forfeited and demanded possession of the premises; that plaintiff was in possession of the land during the crop seasons of 1914 and 1915, without paying defendant anything for the use thereof, and neglected to pay the taxes assessed against the property for the year 1915; that by reason of the failure of plaintiff to perform the conditions of the contract he forfeited all right to the premises, or to a return of the $3,000, or the interest paid.

Plaintiff's reply put in issue most of the material allegations of the answer and averred that defendants delivered possession of only 103.89 acres of one tract, and 23.63 of the other. A decree was rendered in favor of defendants forfeiting all payments made by plaintiff and restoring defendant J. P. Smith's possession of the premises. Plaintiff appeals. Additional facts are stated in the opinion.

AFFIRMED. MODIFICATION AUTHORIZED.

For appellant there was a brief and an oral argument by *Mr. Grant Corby.*

For respondents there was a brief over the names of *Mr. John H. McNary, Mr. Ralph D. Moores* and *Mr. Everil M. Page,* with oral arguments by *Mr. McNary* and *Mr. Moores.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. Plaintiff's complaint as to fraudulent representations on the part of the vendors is not sustained by the evidence. The averment in regard to a want of ownership of about 12 acres of the land contracted for refers to a piece surveyed and marked upon the plat in evidence as 10.15 acres in the shape of a portion of an L extending north from the western boundary of the main tract and down along the Willamette River immediately west of a Mr. Coyle's land. For several years the fences on the south and north of Coyle's land have extended past the strip to the Willamette River so as to embrace the same in his inclosure. This was done apparently to economize in fencing. An attempt was made to show that Coyle had gained title to this tract by virtue of the statute of limitations. He was a witness in the case and plainly stated that he had no use for this land; that he claimed only the land conveyed to him which was a part of the Coyle Donation Land Claim which was shown not to include the 10.15 acre piece, formerly state school land. In the negotiations for the sale, the farm was referred to as consisting of 147 acres. The main contention of plaintiff is that there is a shortage in the number of acres. After the action was commenced by Smith, plaintiff procured a survey of the land to be made which was delineated upon the map exhibited as containing in the aggregate 134.17 acres. While the land is all connected the acreage is computed in four parts, one of which has already been referred to. The larger parcel which is a part of the Coyle Donation Land Claim is nearly in the form of a rectangle. It is surveyed and marked on the plat as containing 103.89 acres. In the negotiations this tract was called 107 acres. Embraced therein is a road occupying 3.49 acres which was not included in

the survey. This, if added, would make a fraction over 107 acres, the estimated area.

2. It is held in this state that the existence of a visible and known physical encumbrance upon land contracted to be conveyed, such as a public highway, is not such an encumbrance as renders the owner's title unmarketable. It is a presumption that in fixing the purchase price the existence of such an easement was taken into consideration by the parties: Maupin on Marketable Title (2 ed.), 197; *Barnum* v. *Lockhart,* 75 Or. 528, 540 (146 Pac. 975); *Wetherby* v. *Griswold,* 75 Or. 468, 475 (147 Pac. 388); *Lombard* v. *Kies,* 79 Or. 355, 362 (154 Pac. 757). For aught that appears in the record plaintiff knew all about the county road. On the west of the 107 acres, between that tract and the Willamette River as surveyed, there are five acres. Adjoining the larger tract on the southwest is one formerly conveyed as 26 acres, which was surveyed as 15.63 acres. The first and two last pieces of land mentioned were conveyed as school lands by the state. In the contract the western boundary of this farm is written as following "the meandering of the channel of the Willamette River." It is in regard to the school lands bordering on the river that the main part of the shortage is claimed. When the survey was made for plaintiff the water of the river was at a high stage. It was surveyed to the edge of the water. The western portion of the land consists of timber lands, a part of which is very productive and a part, somewhat lower and sometimes overflowed which is of less value and is called "rough shore land."

The burden of proof is on the plaintiff to prove the allegations of his complaint.

In order to rescind a contract for the sale of real estate on the grounds of fraudulent representations plain-

tiff must plead and prove all the operative elements of
fraud: *Rolfes* v. *Russel,* 5 Or. 400; *Dunning* v. *Cres-
son,* 6 Or. 241; *Wheelwright* v. *Vanderbilt,* 69 Or. 326
(138 Pac. 857).

3. The second parcel described in the contract by metes
and bounds, being the school land, is referred to there-
in as "containing 40 acres more or less." The evi-
dence does not show that this tract does not consist
of approximately 40 acres, if surveyed at the ordinary
stage of water in the Willamette River according to the
boundary given in the contract of sale, or to the ordi-
nary high-water mark of the river: See *Sun Dial
Ranch* v. *May Land Co.,* 61 Or. 205 (119 Pac. 758). On
the other hand, while the exact area according to such
a survey is not given it is shown that it would make
a great difference in the measurement if made to the
stream and the evidence indicates that the land con-
tained about 40 acres, and that the farm in the aggre-
gate comprised approximately 147 acres. Mr. Horn-
beck is an illiterate man, but does not appear to be
ignorant of business matters. As an incident it ap-
pears that he made two visits to the farm in company
with his son-in-law, Mr. Nelson, and Mr. Ferguson, the
real estate agent. Upon the first visit, by mistake of
memory or on account of error in listing the land for
sale, Ferguson said there were thirty acres of hops on
the farm, to which Mr. Hornbeck promptly replied,
"Well, it ain't there." The agent did not know nor
pretend to know the number of acres. Inquiry was
made of Mr. Van Damm, the lessee then in charge of
the place, and it was ascertained that the large hop-
yard consisted of 18 acres.

It appears that in the negotiations the land imme-
diately bordering on the water was not considered as
valuable as the other land and that Hornbeck under-

stood this as he would not take the island, and a deduction of only $600 was made for this thirty acres. A proposition was pending between the parties for half a day for the agent to take the 10.15 acres which Hornbeck did not want at first as commission, and that the price be reduced to $400 upon such an arrangement.

It is shown that the farm was a fair bargain at the price agreed upon. It contains about 90 acres in cultivation, an eighteen-acre bearing hopyard, and a two-acre peach orchard. There is a residence on the property of the value of about $2,000, a barn, hophouse, dryer, and other farm buildings. During the five years prior to the contract the rental share received by the Smiths ranged from $1,100 to $2,907, averaging $2,096 per annum. It will be observed that the income varied widely in different years. It seems that the hopyard which was one of the best in that part of the county was largely relied upon for profit. After the contract of sale was made the price of hops declined and with that the income of the farm decreased. Unfortunately Mr. Hornbeck was unable to make his payments as agreed, and he tardily complained of the number of acres which he had ample opportunity to ascertain and which he apparently knew approximately at the time of the deal. He speculated on the cultivation of the farm for two seasons and offers the owner no rent or compensation therefor, but seeks a return of the first payment and of one interest payment made therefor.

4, 5. A vendor desiring a rescission of a contract of sale of land must endeavor to restore the *status quo* and make some recompense for profits derived under the contract: *Dundee Mortgage etc. Co.* v. *Goodman,* 36 Or. 453 (60 Pac. 3) ; *Crossen* v. *Murphy,* 31 Or. 114 (49 Pac. 858); *Clarno* v. *Grayson,* 30 Or. 111 (46 Pac.

426); *Frink* v. *Thomas,* 20 Or. 265 (25 Pac. 717, 12 L. R. A. 239). In order to secure a rescission of the contract of sale such a vendee must act promptly upon discovery of a discrepancy in the number of acres: *McCourt* v. *Johns,* 33 Or. 561 (53 Pac. 601); *Waymire* v. *Shipley,* 52 Or. 464 (97 Pac. 807); *Hewitt* v. *Andrews,* 69 Or. 581 (140 Pac. 437). It does not appear that the vendee was overreached or defrauded in making the contract.

In order that Hornbeck may have ample opportunity to comply with the terms of the contract and in view of the fact that upon the trial little attention was paid to the matter of notice to the plaintiff of the declaration of forfeiture by defendant, J. P. Smith, plaintiff Hornbeck should be allowed to apply to the Circuit Court within ten days from the filing in that court of the mandate herein to make payment of the amount due upon the contract of sale; and, in case of such application, he should be allowed ninety days or such time as the Circuit Court may deem reasonable under all the circumstances to make such payment. In the event of such payment or redemption the defendant, J. P. Smith, who appears to be in possession by tenant, should account to Hornbeck for the rents and profits during the time of such possession.

The decree of the trial court is affirmed with the authority for that court to make the modification upon application in accordance herewith; defendants to recover costs in this court.

AFFIRMED. MODIFICATION AUTHORIZED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR. JUSTICE HARRIS concur.

Modified and rehearing denied January 8, 1918.

PETITION FOR REHEARING.

(168 Pac. 419.)

Former opinion modified. Petition for rehearing denied.

*Mr. Grant Corby,* for the petition.

*Mr. John H. McNary, Mr. Ralph D. Moores* and *Mr. Everil M. Page, contra.*

Department 1. MR. JUSTICE BEAN delivered the opinion of the court.

In our former opinion in this suit in order that Hornbeck might have an opportunity to comply with the terms of the contract he was permitted to apply to the Circuit Court within a certain time to make payment of the amount due upon the contract of sale of the land involved and in case of such application to be allowed 90 days or a reasonable time in which to make such payment. It was also held that in the event of such payment or exemption the defendant, J. P. Smith, who appeared to be in possession of the land, should account to plaintiff Hornbeck for the rents and profits during the time of such possession. In a petition for rehearing the plaintiff asks for a modification

"in order that the mandate or final decree rendered herein may authorize such supplemental proceedings in the court below sufficient to fully warrant and authorize a complete accounting."

In case of an application by plaintiff Hornbeck to make payment for the land or redemption thereof, the manner of the accounting authorized to be taken was not intended to be directed. Upon such application

being made and an accounting being taken the Circuit Court is at liberty to entertain such supplemental proceedings and make such investigations as may be deemed necessary and warranted by the equities of the case under the law. Except for this modification or explanation the petition for rehearing is denied.

AFFIRMED.

MODIFICATION AUTHORIZED. REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BENSON and MR JUSTICE HARRIS concur.