Argued and submitted May 5, reversed and remanded November 4, 1980

## LEACH, et ux,
### *Plaintiffs,*
### *v.*
## GUNNARSON, et ux,
### *Petitioners,*
### *v.*
## LEACH,
### *Respondent.*

## (CA 13659, SC 26754)

619 P2d 263

Ronald L. Gould, of McNutt, Gant, Ormsbee, Corrigall & Gould, Coos Bay, argued the cause and filed briefs for petitioners.

Dudley C. Walton, of Geddes, Walton, Richmond, Nilsen & Smith, Roseburg, argued the cause and filed a brief for respondent.

HOWELL, J.

**HOWELL, J.**

This action involves the question whether an irrevocable license to use a spring on a grantee's land is a breach of the grantor's covenant against encumbrances if the license is an open, notorious and visible physical encumbrance. Petitioners (hereinafter "plaintiffs") are third-party plaintiffs seeking damages for breach of the warranty deed from their grantor, the third-party defendant (hereinafter "defendant"). It was established at trial that plaintiffs' neighbors, Henry and Betty Leach (hereinafter "the Leaches"), have an irrevocable license to use and maintain a spring on plaintiffs' property. The trial court instructed the jury that, if they found the license to be an open, notorious and visible physical encumbrance, then there was no breach of the covenant against encumbrances in the grantor's warranty deed. The jury found for defendants. The Court of Appeals affirmed, 43 Or App 761, 604 P2d 419 (1979), and we granted review.

Defendant and her husband (who died prior to trial) were the original owners of a 20-acre parcel of land in Douglas County on which was located a spring. Around 1954, they sold a small piece of an adjoining parcel, which they also owned, to defendant's brother-in-law and his wife, Henry and Betty Leach. Defendant and her husband also orally granted the Leaches the right to locate, construct and maintain a facility to draw water from the spring on defendants' land. The Leaches built a concrete dam one foot high by three feet long and installed a 370-gallon storage tank with a plastic pipe running for 175 feet across defendants' land to convey the water to the Leaches' homesite.

In May, 1975, defendant and her husband sold their 20-acre parcel to plaintiffs. Plaintiff Ove Gunnarson admitted that he knew the Leaches were using the spring, but he also testified that defendant's husband had assured him that the Leaches had no right to use the spring. The warranty deed from defendant and her husband to plaintiffs, after describing the parcel of property, states that the grantors " * * * covenant to and with the grantees that [the parcel] is free and clear of all encumbrances, and that grantors will warrant and defend the same against all persons who may lawfully claim the same."

In June of 1977, the Leaches filed a suit in circuit court seeking a decree that they own in fee simple an easement for installing and maintaining a domestic water supply line and water basin and tank located at the spring on plaintiffs' land. Plaintiffs filed an answer denying that the Leaches have a right to use the spring. Plaintiffs also filed a third-party complaint against defendant alleging that, if the Leaches do establish a right to use the spring, then defendant is in breach of her covenant in the warranty deed that the parcel was free and clear of all encumbrances. Defendant denied any breach of warranty.

The circuit court, in a separate trial, first determined that the Leaches are owners in fee simple of an irrevocable license to use the spring for domestic water supply. The court then held a separate trial on the issue of defendant's breach of warranty.

Plaintiffs contended at trial that, because defendant had covenanted against encumbrances in her warranty deed and had not excepted the Leaches' irrevocable license to use the spring on plaintiffs' property, defendant was in breach of her warranty deed. Defendant filed an answer denying that the Leaches' irrevocable license to use the spring is an encumbrance on plaintiffs' property. Defendant alleged as an affirmative defense that the Leaches' use of the spring was an open, notorious and visible encumbrance known to plaintiffs, that the license did not constitute an encumbrance, and that plaintiffs knew of the license.[1]

---

[1] The defendant's Amended Answer to Third Party Complaint, dated February 15, 1979, and further amended in open court on the same date, contains the following, in pertinent part:

"For a further separate and affirmative answer and defense to said Third Party Complaint, Defendant alleges as follows:

I

"That the irrevocable licenses decreed to be owned and held by Henry Leach and Betty C. Leach by the decree of the above-entitled Court, entered on the 29th day of of March, 1978, were open notorious visible encumbrances upon the lands described in that certain deed alleged in Paragraph I of Plaintiff in the Third Party Complaint at the time of the delivery and execution of said deed, and the grantors and the grantees in said deed took the existence thereof into consideration in the fixing of the purchase price of said conveyance. *Denies that at the time alleged in said Para III or any other time*

Plaintiffs' motion to strike defendant's affirmative defense was denied. Plaintiffs also moved for a directed verdict on the grounds that the allegations did not constitute a defense. The court denied that motion also.

Plaintiffs requested jury instructions to the effect that their knowledge of the Leaches' use of the spring does not relieve the defendant of her liability under her covenant against encumbrances in her warranty deed. The trial court failed to give plaintiffs' requested instructions and, instead, gave the following instructions:

"A covenant in a deed conveying real property that the same is free from encumbrances except those listed therein is not breached by the existence upon the property described in said deed by an open, notorious and visible, physical encumbrance.

"The mere existence of one or more irrevocable licenses owned by the Henry Leaches, * * * as are admitted by all parties, do [sic] not constitute an encumbrance which is a breach of any covenant in the deed from Defendant and her husband as grantors to the Plaintiffs as grantees, if you find that any of such irrevocable licenses were open, notorious and visible, physical encumbrances capable of being seen and known to the Plaintiffs before they took delivery of said deed."

The jury returned a verdict for defendant, and the circuit court entered a judgment dismissing plaintiffs' complaint.

Plaintiffs appealed, assigning as error: the trial court's failure to strike defendant's affirmative defense,

---

*said irrevocable licenses were established encumbrances on the property therein described.*

**II**

"That before, and at the time of the execution of the warranty deed by Clifford Leach and Defendant, alleged in Paragraph I of the said Third Party Complaint, Defendants had knowledge of the existance [sic] of the rights of Henry Leach and Betty C. Leach as decreed in the above-entitled Court in the suit of Henry Leach and Betty C. Leach against Defendants, made and entered as alleged in Defendant's Third Party Complaint, Paragraph II, which Decree was made and entered on the 29th day of March, 1978. *Admits that Pl's Henry Leach et ux received the decree for which they prayed in the above entitled case.*" (Italicized material amended in open court). (Reference to "licenses" includes use of a portion of land for installation of TV transmission line, as well as water rights in spring.)

the court's failure to direct a verdict in plaintiffs' favor, the court's failure to give plaintiffs' requested instructions, and the court's instructions to the jury that the covenant against encumbrances is not breached by the existence of an open, notorious and visible physical encumbrance.

The Court of Appeals affirmed the trial court, citing the case of *Ford v. White,* 179 Or 490, 495-96, 172 P2d 822 (1946), for the proposition that a covenant to convey real property free from encumbrances is not breached by the existence of an open, notorious and visible physical encumbrance.

Before turning to plaintiffs' reasons for reversal, we should review the law regarding warranty deeds and a grantor's covenant against encumbrances.

■     Historically, a warranty deed would include covenants of title, which typically are the covenant of seisin, the covenant of good right to convey, the covenant of quiet enjoyment, and the covenant against encumbrances. *See generally* Powell, Real Property ¶ 904 (1979); Tiffany, Real Property § 999 (1975). If the warranty deed contains the grantor's covenant that the real property is free and clear of all encumbrances, that covenant protects the grantee against all encumbrances that exist as of the date of the delivery of the deed, whether the encumbrance was known or unknown to the grantee at that time. *See, e.g., Western Grain Co. v. Beaver Land-Stock Co.,* 120 Or 678, 683, 230 P 103, 253 P 539 (1927); *Winn v. Taylor,* 98 Or 556, 579-80, 190 P 342, 194 P 857 (1927); *Corbett v. Wrenn,* 25 Or 305, 311, 35 P 658 (1894); Powell, *supra* at 268.21, ¶ 907; Tiffany, *supra* at 272, § 1008.

■■     Because the deed is a document containing the grantor's covenants, courts generally construe the deed against the grantor and in favor of the grantee. *See, e.g., Hurd v. Byrnes,* 264 Or 591, 598, 506 P2d 686 (1973); *Palmateer et al v. Reid,* 121 Or 179, 183-85, 254 P 359 (1927); *Estep v. Bailey,* 94 Or 59, 64, 185 P 227 (1919); Tiffany, *supra* at 93, § 978. When a grantor covenants against encumbrances, the grantor is expected to clearly state in his deed what, if any, encumbrances are accepted by the grantee, will continue in existence and are therefore

excluded from the scope of his covenant against encumbrances. *See Estep v. Bailey, supra* at 64-65; *Corbett v. Wrenn, supra* at 311; Powell, *supra* at ¶ 907; Tiffany, *supra* at § 1002.

In 1973 the legislature enacted ORS 93.850 which provides a form for the warranty deed. 1973 Or Laws, ch 194, § 1. The warranty deed form in ORS 93.850 is permissive and not mandatory, and other warranty deed forms may be used. *See* ORS 93.870. ORS 93.850 reads as follows:

"(1) Warranty deeds may be in the following form:

---

_____, Grantor, conveys and warrants to _____ Grantee, the following described real property free of encumbrances except as specifically set forth herein: (Describe the property conveyed.)

(If there are to be exceptions to the covenants described in paragraph (c) of subsection (2) of this section, here insert such exceptions.) The true consideration for this conveyance is $____. (Here comply with the requirements of ORS 93.030.)

Dated this ____ day of ____, 19 ____.

---

"(2) A deed in the form of subsection (1) of this section shall have the following effect:

"(a) It shall convey the entire interest in the described property at the date of the deed which the deed purports to convey.

"(b) The grantor, his heirs, successors and assigns, shall be forever estopped from asserting that the grantor had, at the date of the deed, an estate or interest in the land less than that estate or interest which the deed purported to convey and the deed shall pass any and all after acquired title.

"(c) It shall include the following covenants, each of which shall run in favor of the grantee and his successors in title as if written in the deed:

"(A) That at the time of the delivery of the deed the grantor is seized of the estate in the property which the grantor purports to convey and that he had good right to convey the same.

"(B) That at the time of the delivery of the deed the property is free from encumbrances except as specifically set forth on the deed.

"(C) That the grantor warrants and will defend the title to the property against all persons who may lawfully claim the same.

"(3) If the grantor desires to exclude any encumbrances or other interests from the scope of his covenants, such exclusions must be expressly set forth on the deed."

Legislative history indicates that ORS 93.850 was intended to provide practitioners with a modern simplified form of the warranty deed and also to codify the law in this state with regard to the effect of a conveyance of real property by a warranty deed in the statutory form.

The warranty deed used by defendant to convey the real property to plaintiffs reads, in pertinent part, as follows:

"KNOW ALL MEN BY THESE PRESENTS, that CLIFFORD LEACH and WILMA LEACH, husband and wife, grantors, convey to OVE K. GUNNARSON and IN-GA-LILL GUNNARSON, husband and wife, grantees, for and in consideration of the sum of THIRTY THOUSAND DOLLARS ($30,000) to them in hand paid, all that real property situated in the County of Douglas, State of Oregon, described as:

[Legal description omitted]

and covenant to and with the grantees that it is free and clear of all encumbrances, and that grantors will warrant and defend the same against all persons who may lawfully claim the same.

"DATED this 12 day of May, 1975.

" /s/ Clifford A. Leach "

Comparing the warranty deed used by defendant to the form in ORS 93.850, we find them to be similar, if not identical, in all essential respects. Defendant's warranty deed warrants that the real property is "free * * * of * * * encumbrances" and states in dollars the amount of consideration paid by plaintiffs. Defendant's warranty deed may contain more language than contained in the form in the statute, but defendant's deed does not limit or except any of the covenants of title specified in ORS 93.850(2)(c). We therefore hold that the warranty deed used by defend-

ant is in the form of ORS 93.850(1) and that therefore ORS 93.850(1) and ORS 93.850(3) apply.[2]

ORS 93.850(3) requires a grantor who uses a warranty deed and covenants against encumbrances to expressly exclude any encumbrance or other interests from the scope of the covenant against encumbrance. Otherwise, ORS 93.850(2)(b) has the effect of estopping the grantor, her heirs, successors and assigns, from asserting that the grantor had an estate or interest in the land less than that estate or interest which the deed purported to convey. Thus ORS 93.850 and the prior case law of this state require a grantor who covenants against encumbrances in a warranty deed to be liable to the grantee if the real property, as of the date of the deed, is encumbered by any interest not expressly excluded from the scope of the covenant against encumbrances.

Turning now to plaintiffs' argument for reversal, plaintiffs assign as error the failure of the trial court to strike defendant's affirmative answer, alleging that (1) the irrevocable license did not constitute an encumbrance; (2) the plaintiffs knew of the Leaches' rights in the spring; and (3) the license was open, notorious and visible.

■ ORS 93.850 does not define the term "encumbrance" but our prior cases have done so. An "encumbrance," as the term is used in a grantor's covenant that the premises are free and clear of all encumbrances, generally means "any right to or interest in the land, subsisting in a third person, to the diminution of the value of the land, though consistent with the passing of the fee by conveyance." *Ford v. White, supra* 179 Or at 494; *Winn v. Taylor, supra* 98 Or at 565. *See also* Powell, *supra* at ¶ 907; Tiffany, *supra* at § 1002.

■ Because the question of whether the license diminished the value of the property was an issue in the case, the trial court did not err in refusing to strike defendant's

---

[2] Although neither plaintiffs nor defendant refer to ORS 93.850 in their briefs, the trial court instructed the jury on the statute.

allegation that the license did not constitute an encumbrance.[3]

Plaintiffs contend also that defendant was not entitled to allege in her affirmative defense that plaintiffs knew of the existence of the Leaches' rights and that the Leaches' irrevocable license was an "open, notorious and visible encumbrance."

ORS 93.850 does not distinguish between types of encumbrances and does not state a rule regarding a grantee's knowledge of the encumbrance. Our prior decisions, however, clearly state that a grantor's covenant against encumbrances in a warranty deed protects the grantee against all encumbrances existing at the time of the delivery of the deed even if the grantee knew about the encumbrance. *Western Grain Co. v. Beaver Land-Stock Co., supra* 120 or at 683; *Estep v. Bailey, supra* 94 Or at 65; *Corbett v. Wrenn, supra* 25 Or at 311. *See also* Powell, *supra* at ¶ 907; Tiffany, *supra* at 272, § 1008. In some jurisdictions, however, a different rule applies with respect to encumbrances that affect the physical condition of the real property and that are open, notorious and visible. *See generally* Powell, *supra* at ¶ 907; 20 Am Jur 2d, Covenants § 84. With respect to known easements for a public highway or a railroad right-of-way, courts are in conflict, and some have held that such an easement does not constitute a breach of the covenant against encumbrances. This court has previously considered this rule with respect to physical encumbrances in two cases: *Ford v. White, supra,* and *Barnum v. Lockhart,* 75 Or 528, 146 P 975 (1915).

In *Barnum* a vendor of real property, in an installment contract, promised to provide his purchaser with a deed covenanting against encumbrances. The vendor provided the purchaser with an abstract of title which showed that the Coos Bay Roseburg Eastern Railway & Navigation

---

[3] We recognize that diminution in value may not always be a necessary element of plaintiff's proof of an encumbrance where plaintiff seeks rescission rather than damages. There may be instances where the encumbrance has a substantial effect on the buyer's use of the land so he would not have purchased it had he known the condition existed, although the condition did not, in a general sense, diminish the market value of the land.

Company owned a railroad right-of-way across the property. The purchaser refused to continue making the installment payments on the contract, claiming that the vendor's abstract did not show marketable title free and clear of encumbrances. This court held that the vendor's title was not unmarketable because the railroad right-of-way was an encumbrance of such a character that the parties could not have contemplated that the vendor would remove the encumbrance prior to conveying the deed.

The *Barnum* court relied on a rule of law stated in Maupin on Marketable Title 197 (2d ed 1889):

"As a general rule, the existence of an open, notorious, and visible physical encumbrance upon the estate, such as a public highway, forms no objection to the title, because it is presumed that the purchaser was to take subject to such encumbrance. Neither does such encumbrance entitle the purchaser to * * * a conveyance with a covenant against the encumbrance, because it is presumed that in fixing the purchase price the existence of the encumbrance was taken into consideration." 75 Or at 540

Mr. Justice McBride, writing for the court in *Barnum,* went on to explain:

"Nothing can be more public than a railway over a tract of land, and *it is inconceivable that defendant [purchaser] could have contemplated that plaintiff [vendor] would remove it before tendering an abstract,* and equally inconceivable that he was ignorant of its existence. Without reference to authority it seems reasonable that where the existence of so palpable a physical easement as a railroad is urged as an objection to the title, the burden of pleading and proof should be upon the purchaser to show that he was in fact ignorant of its existence. * * *" 75 Or at 541. (Emphasis added.)

In *Ford v. White, supra,* the purchasers of real property sought to rescind their executory contract because the vendor, who had promised to convey the premises free and clear of encumbrances, furnished an abstract of title that showed that the California Oregon Power Company owned an easement on the land. The easement affected the real property only to the extent that two guy wires, attached to a pole not on the property, extended about 20 feet onto the property where they were anchored. The trial court

found that the purchasers had observed the power line and the two guy wires prior to entering into the contract. Citing *Barnum,* this court held that

> "[a] covenant to convey real property free from incumbrances is not breached by the existence upon the property of an open, notorious, and visible physical incumbrance, as it is presumed that, in fixing the purchase price, the existence of the incumbrance was taken into consideration." 179 Or at 495-96

The court then concluded that the encumbrance, known to the purchasers, did not render the vendor's title unmarketable.

■      It is unnecessary for us to decide whether the decisions in *Barnum* and *Ford* are correct today, especially in light of ORS 93.850, because we hold that the Leaches' use of the spring on plaintiffs' property is not the type of an open and notorious encumbrance to which the *Barnum* and *Ford* decisions apply. The exception carved out in those decisions is limited to known easements for public highways, powerlines, railroads and the like. An irrevocable license to use a spring is neither so palpable nor so physically permanent as to come within the exception.

We therefore hold that the trial court erred in not striking from defendant's answer her affirmative defense alleging that the Leaches' irrevocable license was an open, notorious and visible encumbrance. We also hold that the trial court erred in not striking from defendant's answer her allegation that plaintiffs knew of the Leaches' irrevocable license.

■      Plaintiffs contend that the trial court erred in not granting their motion for directed verdict. They argue that, because the *Ford* and *Barnum* decisions do not apply to this case, the only issue properly presented for resolution by the jury was the amount of damages to be awarded. We disagree. In an action for damages for breach of a warranty against encumbrances, an issue is whether or not the encumbrance diminished the value of the land. As previously mentioned, defendant properly raised the issue for the jury as to whether the Leaches' irrevocable license resulted in a diminution of the value of the land and thereby constituted an encumbrance. The trial court

instructed the jury that if they found the plaintiff had not sustained any damages they should find for defendant. The trial court therefore properly denied plaintiffs' motion for directed verdict.

Finally, plaintiffs contend that the trial court erred in instructing the jury that the defendant's covenant against encumbrances was not breached if it found that the Leaches' irrevocable license to use the spring was an open, notorious and visible physical encumbrance. We agree. For the reasons previously stated, defendant was not entitled to a defense based on the *Ford* and *Barnum* decisions. We hold that the trial court therefore erred in so instructing the jury.

Accordingly, we remand for a new trial.

Reversed and remanded.

**PETERSON, J.,** specially concurring.

Looking at the law from the various states, it appears that there is a split of authority whether conditions which are visible, open and notorious constitute a breach of the covenant against encumbrances. Tiffany states:[1]

"* * * In some cases the fact that the grantee had notice, actual or constructive, of a highway upon the land, has been regarded as taking such incumbrance out of the operation of the covenant. In a few cases the fact that the existence of an incumbrance in favor of an individual was apparent upon an inspection of the land, and that consequently the grantee might be presumed to have known thereof, has been regarded as showing that it was not intended to be covered by the covenant, but these cases are exceptional. That the grantee's knowledge of an existing incumbrance in no way relieves the grantor of liability under the covenant by reason thereof has been frequently decided, without any suggestion that such knowledge may be considered for the exclusive purpose of showing that the particular incumbrance was not intended to be covered by the covenant."

According to 7 Thompson, Commentaries on the Modern Law of Real Property 283 (1962), the cases are divided "as to whether open and notorious easements

---

[1] 4 Tiffany, The Law of Real Property 272, § 1008.

are covered by the covenant against encumbrances." Powell[2] states:

"\* \* \* A covenantee is not prevented from recovering by proof that he knew of the encumbrance when he accepted the deed; but, this statement must be qualified by excepting physical conditions of the land itself which were apparent on inspection and which are found to have been within the contemplation of the parties in agreeing on the purchase price."

Maupin, in his book entitled Marketable Title to Real Estate, 3d ed (1921) states, at page 332:

"\* \* \* In a recent well-considered case in Pennsylvania it was observed by the court that incumbrances are of two kinds, (1) Such as affect the title; and (2) Such as affect only the physical condition of the property. A mortgage or other lien is a fair illustration of the former; a public road or right of way of the latter. Where incumbrances of the former class exist, the covenant against incumbrances is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title. Such incumbrances are usually of a temporary character and capable of removal; the very object of the covenant is to protect the vendee against them; hence, knowledge, actual or constructive, of their existence is no answer to an action for the breach of such a covenant. Where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects not the title but the physical condition of the property, a different rule prevails. Thus it was held that where the owner had covenanted to convey certain lots free from all incumbrances, a public road which occupied a portion of the lots was not an incumbrance within the meaning of the covenant. This is not because of any right acquired by the public, but by reason of the fact that the road, although admittedly an incumbrance, and possibly an injury to the premises, was there when the purchaser bought, and he is presumed to have had knowledge of it. In such and similar cases there is the further presumption that if the incumbrance is really an injury, such injury was in the contemplation of the parties and that the price was regulated accordingly.

"The rule that a purchaser, with notice of an easement affecting the premises, cannot complain thereof as a

---

[2] 6A Powell, Law of Real Property 81-129, § 898.

breach of the covenant against incumbrances unquestionably applies where the easement is obviously an appurtenance or incident of the estate. * * *

"* * * * *.

"It is suggested, with diffidence, that it is immaterial, so far as the mere question of damages is concerned, whether a highway or other easement of which the purchaser had notice, shall be considered a technical incumbrance. If he bought, knowing that the easement was there, it will be presumed that the price he agreed to pay was the value of the land after allowing for the loss, inconvenience or injury occasioned by the easement. On the other hand, if it appears that the easement is a benefit instead of a burden to the premises, there is no loss or injury to the grantee. In either case it would seem that he could recover only nominal damages for the breach. * * *"

*Huyck v. Andrews,* 113 NY 81, 89-90, 20 NE 581, (1889) states a contrary conclusion:

"In Memmert v. McKeen it was held that encumbrances are of two kinds — first, such as affect the title; and, second, such as affect only the physical condition of the property; that where encumbrances of the former class exist, the covenant is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title; that where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects, not the title, but the physical condition of the property, it is presumed that the grantee took the property in contemplation of such condition and with reference thereto. We do not yield assent to these authorities. They have no sanction in any of the cases decided in this state, and have no adequate foundation in principle or reason. They open to litigation, upon parol evidence in every action for the breach of the covenant against encumbrances caused by the existence of an easement, the question whether the grantee knew of its existence; and in every such case the protection of written covenants can be absolutely taken away by disputed oral evidence. We think the safer rule is to hold that the covenants in a deed protect the grantee against every adverse right, interest, or dominion over the land, and that he may rely upon them for his security. If open, visible and notorious easements are to be excepted from the operation of covenants, it should be the duty of the grantor to except them, and the burden should not be cast upon the grantee to show that he

was not aware of them. The security of titles demands that a grant made without fraud or mutual mistake shall bind the grantor according to its written terms. It should not be incumbent upon the grantee to take special and particular covenants against visible and apparent defects in the title, or encumbrances upon the land; but it should be incumbent upon the grantor, if he does not intend to covenant against such defects and encumbrances, to except them from the operation of his covenants."

The editors of the American Law of Property have also addressed this question. In III American Law of Property 136-137, § 11.49, the following statement appears:

"As a general rule, a contract to convey a fee simple title is not complied with where there exists an easement upon the land, if the full enjoyment of the premises is thereby precluded. But easements which are essential to the full and proper enjoyment of the premises cannot be objected to as an encumbrance. Where, moreover, the easement is of a visible, open and notorious character, the purchaser is presumed to have taken such easement into account and to have contracted to accept the title subject thereto. Of the various types of easements, private rights of way, railroad rights of way and easements of light and air will render the title unmarketable."

The editors of the American Law of Property cite *Ford v. White,* 179 Or 490, 172 P2d 822 (1946), for the proposition that if the easement is open, visible, and notorious, the purchaser is presumed to have taken such easement into account and to have contracted to accept the title subject thereto.

My examination of *Ford v. White* leads to the same conclusion. At page 495 of the opinion, this statement appears:

"A covenant to convey real property free from incumbrances is not breached by the existence upon the property of an open, notorious, and visible physical incumbrance, as it is presumed that, in fixing the purchase price, the existence of the incumbrance was taken into consideration. *Barnum v. Lockhart,* 75 Or. 528, 146 P. 975; 17 Am. Jur., Easements, section 130; Anno., 41 A. L. R., 1446; 74 A. L. R., 1250. Nor does such incumbrance render the title unmerchantable. *Hornbeck v. Smith,* 87 Or. 78, 168 P. 633."

It appears to me that the rule stated in *Ford v. White* has long been the law of Oregon. *See Hornbeck v. Smith,* 87 Or 78, 83, 168 P 633, 168 P 419 (1917); *Wetherby v. Griswold,* 75 Or 468, 475, 147 P 388 (1915); *Barnum v. Lockhart,* 75 Or 528, 540, 146 P 975 (1915); *Lombard v. Kies,* 79 Or 355, 362, 154 P 757 (1916). In my opinion, the Oregon cases discussed above compel the conclusion that, until now, a covenant to convey real property free from encumbrances is not breached by the existence upon the property of an open, notorious and visible physical condition.

I cannot square the holding of the majority opinion (at page 40) with the holdings in *Ford* and *Barnum.* The majority states:

"* * * Our prior decisions, however, clearly state that a grantor's covenant against encumbrances in a warranty deed protects the grantee against all encumbrances existing at the time of the delivery of the deed even if the grantee knew about the encumbrance. *Western Grain Co. v. Beaver Land-Stock Co., supra* 120 Or at 683; *Estep v. Bailey, supra* 94 Or at 65; *Corbett v. Wrenn,* 25 Or at 311. *See also* Powell, *supra* at ¶ 907; Tiffany, *supra* at 272, § 1008. In some jurisdictions, however, a different rule applies with respect to encumbrances that affect the physical condition of the real property and that are open, notorious and visible. * * *"

It seems clear that, in Oregon, a different rule has prevailed "with respect to encumbrances that affect the physical condition of the real property and that are open, notorious and visible." The majority opinion overrules the Oregon cases cited above.

The majority distinguishes *Barnum* and *Ford,* saying (at 42):

"It is unnecessary for us to decide whether the decisions in *Barnum* and *Ford* are correct today, especially in light of ORS 93.850, because we hold that the Leaches' use of the spring on plaintiffs' property is not the type of encumbrance to which the *Barnum* and *Ford* decisions apply."

I am not sure what is meant by the phrase "the Leaches' use of the spring on plaintiffs' property is not the type of encumbrance to which the *Barnum* and *Ford* decisions apply." Unquestionably, there is a factual difference

between the condition involved in this case and the conditions involved in *Barnum* and Ford, but I am not convinced that the difference is other than one of degree. I am not convinced that the difference is such that we can depart from the rule adopted in the cases cited above without overruling them.

The majority also concludes, however, that the trial court properly denied the plaintiffs' motion for directed verdict, on the theory that if the jury found that plaintiffs had sustained no damages, the jury should find for the defendant.[3] Perhaps my difference with the majority is more apparent than real, but a final word of protestation is in order. As I read the majority opinion, if the parties agreed upon a reduced sales price in contemplation of the physical condition which is now claimed to constitute an encumbrance — that is, that the very condition at issue was within the consideration of the parties in agreeing on the purchase price — then there would be no difference between the agreed-upon sales price and the market value of the property. If the proper measure of damages is the difference between the sales price and the fair market value of the property, with the condition, no unfairness would result, for the difference would be zero. However, an extremely unfair result may ensue, depending upon the measure of damages which applies. For example, the trial court, in the case at bar, instructed the jury:

"* * * The measure of damages is to be — if you reach that point, is to be determined by you as follows:

"If you find that Defendant has breached the covenant contained in the warranty deed wherein Defendant

---

[3] The majority holds:

"Plaintiffs contend that the trial court erred in not granting their motion for directed verdict. They argue that, because the *Ford* and *Barnum* decisions do not apply to this case, the only issue properly presented for resolution by the jury was the amount of damages to be awarded. We disagree. In an action for damages for breach of a warranty against encumbrances, an issue is whether or not the encumbrance diminished the value of the land. As previously mentioned, defendant properly raised the issue for the jury as to whether the Leaches' irrevocable license resulted in a diminution of the value of the land and thereby constituted an encumbrance. The trial court instructed the jury that if they found the plaintiff had not sustained any damages they should find for defendant. The trial court therefore properly denied plaintiffs' motion for directed verdict."

conveyed real property free from encumbrances, then you are to award to Plaintiffs the amount of money that is equal to the difference between the fair market value which that real property would have had if it had not been encumbered with the irrevocable licenses and the fair market value of the real property with such encumbrances."

Under that instruction, the jury might award grantee windfall damages. Let me illustrate. Suppose that the fair market value of the subject property, without the dam, storage tank and pipeline, was $100,000 and that the fair market value of the property, subject to these conditions, was $90,000. Suppose that the parties agreed to a sales price of $90,000 because of the existence of the condition. The majority holds (at 42) that it is no defense "that [grantee] knew of the [grantor's] irrevocable license." Under the instruction, the grantee would receive $10,000 in damages, even if the grantee knew of the condition and the purchase price was reduced by $10,000 because of the condition.

No issue concerning the proper measure of damages is before this court. If, however, the trial court's instruction to the jury is correct, and if the parties to the contract agreed on a reduced purchase price in light of the condition upon the land, it is patently unfair to permit the grantee to recover damages from the grantor, simply because the grantor neglected to convey subject to the condition.[4]

As I read the majority opinion, the grantor's remedy of reformation, if it can be established, would still be available. Nor does the majority opinion appear to foreclose a defense in the nature of estoppel against the grantee, under which a grantor could assert that the encumbrance was known to the grantee, the purchase price was based in part upon the existence of encumbrance and that the grantee is thus estopped to claim that any damages were sustained by reason of the encumbrance.

---

[4] On the question of the measure of damages for breach of the covenant against encumbrances, see *Western Grain Co. v. Beaver Land-Stock Co.,* 120 Or 678, 230 P 103, 253 P 539 (1927); *Winn v. Taylor,* 98 Or 556, 190 P 342, 194 P 857 (1921); and *Corbett v. Wren,* 25 Or 305, 35 P 658 (1894). None of these cases involve a situation in which the outstanding encumbrance arises from a condition upon the land. *See also,* 4 Tiffany, The Law of Real Property 303, § 1018, and 7 Thompson, Real Property 326, § 3188.

Another point remains, and that is the effect of ORS 93.850 upon this case. What is now 93.850 was enacted by the Oregon Legislature in 1973, as section 1 of chapter 194, Oregon Laws 1973. An examination of the Oregon State Bar Committee Reports for 1972 reveals that this legislation was recommended by the Real Property Committee of the Oregon State Bar. On page 226 of the 1972 Oregon State Bar Committee Reports, these statements appear:

"At the present time Oregon has no statutory form of deed. The Committee concluded that the present state of the law was inadequate in that the archaic language in the printed forms generally available is confusing. Other arguments advanced were: (a) the language would be briefer and more understandable, especially to the public in general; (b) it would encourage the use of simpler forms which many lawyers and others are reluctant to use; (c) a codification of the existing law with respect to the various forms of most deeds would remove any uncertainty the parties might now face as to the effectiveness of the form selected; (d) the statute would provide a reference and explanation of the differences among the different forms of deeds.
"* * * * *.

"The proposed legislation would add a set of statutory forms to the existing forms of deed and would provide an alternative means of conveyance by reference to a statutory form. Statutory deed forms are intended to be more meaningful to the lay public, but would not invalidate any of the existing forms of conveyance. With respect to quitclaim deeds, the legislation is intended to permit one who takes by a quitclaim deed to attain the status of a good faith purchaser for value.
"* * * * *."

I confess to some difficulty in explaining the meaning of the straightforward words in ORS 93.850(2)(b) that "the grantor * * * shall be forever estopped from asserting that the grantor had, at the date of the deed, an estate or interest in the land less than that * * * which the deed purported to convey. * * *" An analysis of the Committee Reports reveals no intent that the rules set forth in the cases discussed above would, in any way, be changed. Moreover, it seems to me that the very distinction made by *Maupin* between encumbrances (1) which affect the title and (2) which affect the physical condition of the

property are clearly reflected in the previous decisions of our court which are cited above. In effect, such conditions do not constitute an encumbrance within the meaning of the covenant. I confess that this explanation is not entirely satisfactory, but in view of the holdings in *Barnum* and *Ford,* that conclusion seems to be compelled.

In *Barnum v. Lockhart, supra,* Justice McBride stated (75 Or at 541):

"* * * Without reference to authority it seems reasonable that where the existence of so palpable a physical easement as a railroad is urged as an objection to the title, the burden of pleading and proof should be upon the purchaser to show that he was in fact ignorant of its existence. * * *"

I favor a rule that a grantee may not recover for breach of an encumbrance which arises from an open, notorious and visible condition on the land if (1) the grantee knew of the condition when the deed was delivered, and (2) the condition was within the contemplation of the parties in fixing the purchase price. Contrary to the suggestion of Justice McBride, I would impose the burden of pleading and proving that the purchaser had such knowledge upon the grantor.