Argued September 12; affirmed October 1, 1946

## FORD ET UX. *v.* WHITE
### (172 P. (2d) 822)

H. K. HANNA, *Judge.*

*G. W. Kellington,* of Medford (with George M. Roberts, of Medford, on brief), for appellants.

*Otto J. Frohnmayer,* of Medford (Neff & Frohnmayer, of Medford, on brief), for respondent.

Before BELT, Chief Justice, and KELLY, BAILEY, LUSK, BRAND and HAY, Justices.

HAY, J.

Suit by vendees for rescission of an executory contract of sale of real and personal property, and for recovery of $2,000 paid by them to the vendor upon the sale price.

The real property involved is called the Clear Springs Ranch, and consists of 30.25 acres of land near the town of Rogue River, in Jackson County. The personal property included farm machinery, tools, household furniture and livestock. The contract of sale was dated September 3, 1943. The vendor was Mrs. Clara B. White, defendant and respondent herein, and the vendees were Mr. and Mrs. Robert V. Ford, plain-

tiffs and appellants. The agreed sale price was $20,000, payable in installments.

The contract required the vendor to furnish, as soon as possible, an abstract of title showing merchantable title to the real property. An abstract was submitted to the vendees on October 23, 1943, and, in due course, was examined by an attorney for the vendees. On October 27th, the attorney notified the vendor that the title was unmerchantable. On October 29th, the vendor conferred with the attorney, who suggested that the simplest way out of the difficulty was for the vendor to furnish title insurance. On October 29th and 30th, the attorney advised vendees, by letters, of his objections to the title, and of the fact that he had suggested that the vendor furnish title insurance.

The vendees resided in California. On or about November 12, 1943, Mr. Ford took possession of the ranch for the vendees. On November 30, 1943, the vendees formally rescinded the contract of sale, assigning as their reason for such action the alleged non-merchantability of the title, and demanded repayment of $2,000 theretofore paid by them on account of the sale price. The vendor refused to comply with such demand. On or about December 7, 1943, the vendees removed from the property. As it was being operated as a dairy farm and the cows had to be cared for, the vendor was obliged to and did resume possession.

The complaint prays for rescission of the contract upon the alleged ground that the title to the real property, as disclosed by the abstract, was unmarketable. Issue was joined, and, after a hearing, the lower court made findings and conclusions in favor of defendant-vendor, and dismissed the suit. Plaintiffs appeal.

The contract required the vendor to convey the premises "free and clear of encumbrance". The abstract of title disclosed that former owners had granted an easement upon the real property in favor of The California Oregon Power Company. The instrument by which the easement was granted reads, in part, as follows:

"Does hereby grant unto said party of the second part, its successors and assigns, the right of way and easement to erect, construct, repair, replace, maintain and use, from time to time as the said party of the second part, its successors and assigns may see fit, over, along, across and upon the lands of said parties of the first part hereinafter particularly described, for transmission and distribution of electricity, and for all purposes connected therewith, poles and wires suspended thereon and supported thereby and all necessary or proper cross-arms, braces, connections, fastenings and other appliances and fixtures, and wires for telephone purposes of the said party of the second part, its successors and assigns, also, to remove the trees and make the clearing necessary and desirable for the purposes aforesaid; also to put in place necessary guy wires and brace poles and attach guy wires to trees along said line; the party of the second part, its successors or assigns, may construct and maintain gates at all fences crossed by its transmission lines, but shall keep locks thereon and give permission to no one save employees of the party of the second part, its successors or assigns, to enter therein.

"The said lands of said parties of the first part, above mentioned, are situate in the County of Jackson, State of Oregon, and are more particularly described as follows:

"Section 27 of Township 36 South Range 4 West of the Willamette Meridian. Said pole line to be

located as surveyed and stated (staked) on the ground.''

Appellants contend that the Power Company's easement interferes with and curtails the full and exclusive enjoyment of the fee simple title to the premises.

■ Incumbrance, in this connection, means any right to or interest in the land, subsisting in a third person, to the diminution of the value of the land, though consistent with the passing of the fee by conveyance. 2 Greenleaf, Evidence, 16th ed., section 242; Devlin on Real Estate, 3d ed., section 906; *Prescott v. Trueman,* 4 Mass. 627, 3 Am. Dec. 246; *Huyck v. Andrews,* 113 N. Y. 81, 20 N. E. 581, 3 L. R. A. 789, 10 Am. St. Rep. 432; *Friendly v. Ruff,* 61 Or. 42, 120 P. 745; *Winn v. Taylor,* 98 Or. 556, 190 P. 342, 194 P. 857; *Estep v. Bailey,* 94 Or. 59, 185 P. 227.

Appellants say that, under the easement, the Power Company has the unlimited right to remove trees from the property and to make such clearing as it may deem necessary and desirable. There are walnut trees upon the property, growing near the power line, and appellants say that the Power Company may trim such trees back to any distance determined by it to be necessary and desirable, or may remove them altogether. We think that, under a proper construction of the easement, the Power Company had the right to remove such trees and to make such clearing as might have been necessary for the erection of the line. The line was erected more than twenty years ago and has been maintained in its original location and condition ever since. It stands entirely within land granted to Jackson County for highway purposes and now occupied by the Pacific Highway. While the company has the undoubted right to trim overhanging branches of trees

which interfere with its wires, if such trimming is reasonably necessary to insure the safe operation of the power line, it is idle to suggest that there are no limits to the exercise of such right. Cf. *Moss v. Peoples California Hydro-Electric Corp.*, 134 Or. 227, 293 P. 606.

The land occupied by the highway was specifically excepted from sale under the contract. The highway makes a curve immediately in front of the dwelling-house upon the premises, and the power line follows the curve of the highway. It is customary in the erection of pole lines to stay them with guy wires attached to a pole or poles where the line is angled or curved. This particular line has two such guy wires attached to one pole and extending about twenty feet on to the real property contracted to be sold, where they are anchored in a common anchorage. Mr. Ford visited the property twice before executing the contract. These guy wires were then plainly visible to any one passing along the highway or entering upon the premises, and the trial court found that Mr. Ford actually observed them. We think that his testimony warranted such finding. We quote:

"Q. Now that guy line was on the property at the time you first went there wasn't it in September of 1943? A. Well, as I say, there was a turn in the road and had guy wires only going around this turn.

"Q. And it is something you can readily observe when you look at it isn't it? A. If you are looking for it, yes. I noticed it had quite a few bushes around it."

■ A covenant to convey real property free from incumbrances is not breached by the existence upon the property of an open, notorious, and visible physical incumbrance, as it is presumed that, in fixing the pur-

chase price, the existence of the incumbrance was taken into consideration. *Barnum v. Lockhart,* 75 Or. 528, 146 P. 975; 17 Am. Jur., Easements, section 130; Anno., 41 A. L. R., 1446; 74 A. L. R., 1250. Nor does such incumbrance render the title unmerchantable. *Hornbeck v. Smith,* 87 Or. 78, 168 P. 633.

■ The easement provided that the pole line was to be located as surveyed and staked on the ground. There is undisputed evidence that, at that time, the line actually had been located and surveyed, and that it was thereafter erected upon such surveyed location. The only extent to which the easement actually affects the real property involved herein is the location of the two guy wires. The general rule is that, when a pole line is erected upon a location which was definitely selected before the granting of an easement for such purpose, its location cannot be changed thereafter without the consent of the owner of the servient estate, and that the right to "alter, repair, or renew", does not convey authority to change the location. 17 Am. Jur., Easements, section 87.

■ Appellants contend that, even assuming that they had notice of the easement, nevertheless they were not charged with notice of unusual burdens placed upon the estate thereby. In *Bozdech v. Montana Ranches Co.,* 67 Mont. 366, 216 P. 319, cited by appellants in this connection, the court held that, since the easement to erect and maintain a pole line involved in that case by its terms placed restrictions upon the use of the land for a distance of seventy-five feet on either side of the line, such easement affected the merchantability of the title to the premises. Such a restriction was indeed an unusual one, but none such is involved in the case at bar. We are of the opinion that the physical existence of the

power line upon the premises, observed by the vendees before contracting to purchase, was sufficient notice to them that the owner of such line, in the reasonable maintenance thereof, had the right to trim trees to such extent as might be necessary to insure the safe operation of the power line. In our opinion, the easement placed no unusual burdens upon the servient estate. *Chandler v. Gault*, 181 Wis. 5, 194 N. W. 33, 36.

■ The patent from the United States, which was the initial step in the vendor's chain of title to the premises, correctly described the land. The record of such patent in the deed records of Jackson County, however, misdescribed it, and such misdescription was disclosed by the abstract of title. To that extent, the abstract showed unmerchantable title. This court has held that, where, in connection with a sale of land, a vendee contracts to receive an abstract showing merchantable title to the land free from incumbrances, the contract is not performed unless such an abstract is furnished, no matter how good the title may be in fact. *Kane v. Rippey*, 24 Or. 338, 33 P. 936; *Wurfel v. Bockler*, 106 Or. 579, 210 P. 213; *Annand v. Austin*, 86 Or. 403, 167 P. 1017, 168 P. 725; *Fagan v. Hook*, 134 Iowa 381, 105 N. W. 155, 111 N. W. 98.

■■ The contract in the present case, however, provided that, in the event that the title, as shown by the abstract, was not merchantable, the vendor should proceed to make it so. All that was necessary was for the vendor to procure an exemplification of the original patent. Some delay was brought about, however, as we have noted above, by the vendees' attorney having suggested to the vendor that she should furnish title insurance in lieu of an abstract. The vendees were advised by their attorney of his action in this connection, and,

by silence, apparently acquiesced therein. The vendor proceeded to instruct a title insurance company to furnish her with a title insurance policy. In the meantime, on or about November 12th, with full knowledge of the action of their attorney in the premises, the vendees took possession of the property. On November 30th, while still in possession, they formally rescinded the contract of sale. It is apparent, therefore, that they allowed the vendor only from October 27th to November 30th, or slightly over one month, to cure the alleged defects in title, which were some twenty in number, although only two have been urged before this court. The rule is that, under such circumstances, a reasonable time must be allowed to the vendor to make the title merchantable. *Collins v. Keller,* 62 Or. 169, 124 P. 681; *Wurfel v. Bockler,* supra; 66 C. J. Vendor and Purchaser, section 242. What may be a reasonable time depends, of course, upon the circumstances of each case, but, in our opinion, the time allowed in the present instance was not reasonable.

If the vendees had decided not to accept title insurance (which, by the way, they had originally demanded) and had so advised the vendor, it is apparent that the latter could have cured the title quite easily. As a matter of fact, she did later, as an incident to securing title insurance, procure a certified photostatic copy of the original patent.

In rescinding their contract under the circumstances above set forth, we hold that the appellants acted arbitrarily and without legal justification.

The decree appealed from is affirmed, with costs.