Argued January 5, reversed February 27, 1970

DAVIS ET UX, *Respondents, v.* DEAN VINCENT, INC. ET AL, *Appellants.*

465 P. 2d 702

*Marvin Swire,* Portland, argued the cause for appellants. With him on the briefs were Rosenberg, Swire & Riebe, Gerald H. Robinson and Douglas C. Morris, Portland.

*Frederick A. Anderson,* Tigard, argued the cause for respondents. With him on the brief were Anderson & Dittman, Tigard.

TONGUE, J.

This is a suit to rescind a contract for the sale of a trailer court and for the return of $5,000 paid by plaintiffs (the purchaser) as earnest money.

Defendants (the seller and the realtor), appeal from an adverse decree, which was based upon a finding that defendant Angell had misrepresented his ownership of the property by representing in the contract that he was its sole owner, whereas the property was held in an estate by the entirety with his wife, who did not sign the contract. Plaintiffs cross-appeal from the failure of the court to find that both defendants also misrepresented the earnings of the trailer court and that the contract was improperly altered and modified after its original execution.

On February 9, 1968, defendant Howard Angell and his wife, Doris C. Angell, were owners, as tenants by the entirety, of a trailer court near Portland. On that date Howard Angell signed a listing agreement with defendant Dean Vincent, Inc. for sale of the property. His wife did not sign the listing agreement, but testified that the property was listed with her consent and approval.

Plaintiff Dr. Leonard Davis saw the property advertised, went to look at it, and then instructed a

salesman of Dean Vincent named Paul Henderson to prepare an offer to purchase the trailer court for $375,000, to include $50,000 in cash, four "view residential lots" owned by Davis, and the balance under a land sales contract payable at $2,500 per month.

Accordingly, a proposed "contract for exchange of property" was prepared by Henderson, in the nature of an earnest money agreement. By its terms, it was an agreement by and between Howard Angell and Leonard Davis. The agreement also provided that:

> "Each party covenants and agrees with the other that he has good right to sell and convey his respective property and that except as stated above he is the owner in fee simple hereof and that the same is free of all encumbrances."

In addition, the agreement provided that each party would "forthwith" furnish the other with a policy of title insurance insuring "as of this date or subsequent" good and marketable title, free of all encumbrances "excepting those listed", and that "preliminary to closing" each party "may" furnish to the other a preliminary title report, to be "conclusive evidence as to the status of such parties title", but not to excuse the delivery of the title insurance policy.

The agreement went on to provide that:

> "*Each party shall have* ten days after delivery of said title insurance or preliminary report in which to examine the same and a further period of *thirty days after written notice of defects to correct defects in his title,* should any such appear." (Emphasis added.)

On either March 18 or March 20, 1968, Dr. Davis, and also his wife, signed the agreement after adding words "subject to checking and approval of second parties (Davis') attorneys".

On March 23, 1968, the agreement was also signed by Howard Angell, "subject to removal of the above stipulation requiring attorney's approval by March 25 * * *". Later on that same date Dr. Davis deleted that added provision by crossing it out and also initialed the deletion.

Meanwhile, a check for $5,000 as earnest money was delivered by Davis to Henderson. Also, both before and after that date, Davis visited the trailer park, talked to Henderson, Angell and the caretaker about its earnings and examined a "monthly operating statement" of prospective earnings, as well as receipt books for previous earnings.

On March 28, 1968, a preliminary title report was issued on the trailer court showing title in Howard I. Angell and Doris C. Angell, as tenants by the entirety. The report showed on its face that copies were mailed to both Davis and Angell.

Three weeks later, on April 13, 1968, Davis contacted Henderson and told him that the earnings of the trailer court had been misrepresented. Two days later, at a meeting at the office of Dean Vincent, Davis demanded the return of his earnest money, giving as his sole reasons that the earnings had been misrepresented and that there were children in the trailer court.

On April 18, 1968, the attorney for Davis also wrote a letter to Dean Vincent demanding return of the earnest money "by reason of misrepresentations made to him of matters material to their proposal", stating that otherwise "action will be filed to recover the same". At no time, however, did Davis or his attorney ever claim or complain that the title of Mr. Angell was defective or that title or ownership had been misrepresented in any way until the filing of the complaint in this case on May 17, 1968.

In addition to the facts as previously stated, it should also be noted that defendants offered in evidence testimony of Mrs. Angell that she was prepared to sign any papers that were necessary to complete the sale of the trailer court. An objection was sustained to that question and she then testified "under the rule" that she was willing to do so "when the time came".

■ The first cause of suit of the complaint alleged misrepresentation of the earnings of the trailer park. We have examined the record and agree with the finding by the trial court that plaintiffs' proof was insufficient to sustain these allegations.

The second cause of suit alleged that the agreement had been altered and modified without the consent of Mrs. Davis when her husband deleted the provision requiring approval by their attorney. We have also examined the record and agree with the finding by the trial court that plaintiffs' evidence was insufficient to sustain these allegations, particularly in view of the fact that Mrs. Davis was not a named party to the contract.

The third cause of suit alleged that "by the terms of the agreement each party covenanted that he had the right to sell his property and was the owner in fee simple"; that Davis had relied on that covenant, but that Angell had "misrepresented his ownership" in that he was not the owner in fee simple, but was one of two owners, with his wife, and that he was unable to perform the agreement, with the result that Davis was entitled to a decree rescinding the transaction and to the return of the $5,000 paid "in reliance upon said misrepresentation".

The trial judge made a finding of fact that Howard Angell misrepresented that he was the sole owner in

fee simple and that, on the contrary, the property was held in an estate by the entirety with his wife, who was not a party to the agreement and did not sign it. Based on that finding he held that there was "no effective mutuality in the contract", with the result that plaintiffs were entitled to have it rescinded and to the return of the $5,000 paid by them as earnest money.

In appealing from this holding, defendants contend, among other things: (1) that the contract provided for delivery of written notice of "defects in title" and for a further period of 30 days to correct any such defect; (2) that no such notice was ever delivered to Angell by Davis, but instead Davis repudiated the contract and did so before the time for performance; (3) that Angell was not only entitled to 30 days from the date of notice to correct any "defects in title", but was also entitled to a reasonable time to perform the contract and was not required to deliver a deed conveying good title until the time came for performance of the contract.

In response, plaintiffs contend: (1) that the misrepresentation that Angell owned the property in fee simple and had "good right to convey" was a misrepresentation of a material fact going to "the essence of title", as distinguished from a mere "encumbrance" consistent with conveyance of title; (2) that a false misrepresentation of a material fact, including "the condition of title", though innocently made, may be a ground for rescission of a contract if relied on by the purchaser, requiring him to act promptly and without delay; (3) that in the absence of a showing of either prior authorization, subsequent ratification, or acts constituting an estoppel, a wife is not bound by an agreement made by her husband to sell realty owned

in an estate by the entirety; (4) that because of this the contract was not subject to specific performance and that a contract for the sale of real property which cannot be specifically enforced will usually be rescinded; (5) that Angell had adequate notice of the defect of title when he received the title report and that "there was no evidence whatsoever that he did anything toward curing his title defects", with the result that he and his wife were not entitled "to purge themselves from the blight of misrepresentation", and (6) that her offered testimony that she would have signed the deed when the time came was not sufficient, since what she actually might have done was "a matter of speculation and conjecture", and that plaintiffs were "not required to assume the risk of (that) speculative position" and were "not required to buy a lawsuit".

For the purposes of arriving at a decision of this case it is not necessary to disagree with any of the first four of these contentions by plaintiffs, even though this court has held that mutuality of remedy (as distinguished from mutuality of obligation) is no longer required, as apparently assumed by the trial judge. See *Temple Enterprises, Inc. v. Combs et al*, 164 Or 133, 154-55, 100 P2d 613 (1940).

We do not agree, however, with the contention that Angell had proper notice of the defect in his title and that, in the absence of such notice and without the waiting either for 30 days (as provided by the contract) or for the time for performance, plaintiffs had the right to rescind the contract and demand the return of their earnest money, at least under the facts of this case.

■ The contract between the parties provided that each party should have a period of 30 days "after

written notice of defects to correct defects in his title." We do not consider the preliminary title report, a copy of which was apparently mailed by the title company to Angell, as satisfying the requirement of "written notice of defects", as that term was used by the parties in their contract. At no time prior to the filing of their complaint did Davis ever complain that Angell had either misrepresented his title or that his title was defective. Much less did Davis give written or any notice to Angell complaining of any defect in title, as clearly intended by the terms of the contract to be a condition precedent to any suit for rescission based upon any such defect.

But even if the preliminary title report be considered as satisfying the requirement of written notice of defective title, requiring correction in 30 days, it does not follow that plaintiffs were entitled to relief.

██ Even before the expiration of the 30 day period Dr. Davis demanded the return of the earnest money and refused to proceed further. In addition, there is ample authority to support the proposition that the purchaser has no right to rescind a contract for the sale of land because of a defect in the vendor's title prior to the time for performance of the contract.

In 102 ALR 852 at 878, the general rule is stated as follows:

> "Ordinarily a vendee is not entitled, prior to the time set for conveyance, to rescind and recover back money paid because the vendor is without title."

To the same effect, see 91 CJS 1120, Vendor & Purchaser § 161(a)(4).

This rule applies to cases in which there is a par

tial failure of title, as in this case. Thus, as stated in 109 ALR 242, at 269:

> "* * * [T]he American decisions, in denying the right to rescind or suspend payment for defects of title existing prior to the time set for conveyance, generally ignore any possible distinction as to a defect which is of such a nature as to leave outstanding an interest that is both legal and equitable, and which, therefore, constitutes a partial failure of title, the reasoning adopted frequently being that since one may agree to sell land to which he has no title whatever, a vendee cannot, prior to the time set for conveyance, object to a merely partial or defective title."

This is particularly true when the defect, by its nature, is one that can be removed, as a practical matter, as distinguished from defects which, by their nature, cannot be removed by the seller, as a practical matter. See 109 ALR 269. See also 91 CJS, *supra*, at 1120.[1]

■ As we view it, a defect arising from the failure to have the vendor's wife (with whom title is held in an estate by the entirety) sign the preliminary earnest money contract or one arising from the fact that such a contract incorrectly describes the husband as the sole owner of the property, as in this case, is a defect that can be removed, as a practical matter, within the meaning of the foregoing rule, where, as in this case, testimony was offered that the wife had authorized a

---

[1] Such defects are described in 109 ALR 265 as those of such a nature that the vendor neither has title "nor in a practical sense any prospect of acquiring it." Thus, in Prentice v. Erskine, 164 Cal 446, 129 P 585 (1913), the court described a title defect involving a right of way for a public road as one "which in the nature of things he (the vendor) could not remove by any ordinary method of business negotiation." To the same effect, see Drew v. Bowen, 102 Vt 124, 146 A 254 (1929) and Werth v Willer, 64 ND 119, 250 NW 543 (1933).

listing of the property for sale and was willing to join in the conveyance. Indeed, in view of such testimony she probably could not have later disaffirmed it, in any event, under the facts of this case. See *Marshall v. Wilson*, 175 Or 506, 517, 154 P2d 547 (1944); *Stephens v. Nelson*, 37 Wash 2d 28, 221 P2d 520 (1950); *Whiting v. Johnson*, 64 Wash 2d 135, 390 P2d 985 (1964).

Although there are no previous Oregon cases involving such a defect in title, and thus none directly in point, this result is entirely consistent with the previous decisions by this court. Thus, in *Ward v. James*, 84 Or 375, 164 P 370 (1917), it was held at p 380 (although under somewhat different facts), that:

> "There can be no rescission and recovery of purchase price by the purchaser where the vendor is able and willing to perform within the time limited by the contract of sale: 39 Cyc. 2006. If the vendor fail to furnish good title at the time fixed for performance the purchaser may maintain an action to recover the price paid: 39 Cyc. 2009, note; Eggers v. Busch, 54 Ill. App. 279. Prior to the expiration of the time fixed for tendering the conveyance, James, the purchaser, cannot recover the partial payments made where no deed was required to be given by Ward until the balance of the price is paid, as agreed, the purchaser not having paid nor tendered the amount: Sievers v. Brown, 36 Or. 221 (56 Pac. 170), and cases there cited; McAlpine v. Reicheneker, 56 Kan. 100 (42 Pac. 339); Woodward v. Van Hoy, 45 Mo. 300. Where the payment of the purchase money or a deferred portion thereof and the making or tender of the deed are to occur simultaneously they are regarded as mutual and concurrent acts which disable either party from putting an end to the contract, without performance or a valid offer to perform on his part; Frink

v. Thomas, 20 Or. 265, 273 (25 Pac. 717, 12 L.R.A. 239)."

See also *Hawkins v. Rodgers,* 91 Or 483, 498, 179 P 563 (1919); *Hill v. Doerfler,* 150 Or 628, 635, 47 P2d 260 (1935).

■ If the case is considered as one based upon a misrepresentation of ownership, the same result follows, in view of the rule that a contract may not be rescinded because of a misrepresentation in the absence of a showing that some damage has or will result. Thus, as the rule is stated in 8A Thompson on Real Property, 417-18 § 4473:

"Misrepresentation of title is fraud if it results in injury to the purchaser, but no fraud justifying rescission exists where the purchaser sustained no injury and the vendor entered into the contract in good faith, and is able to furnish a good title upon demand. Thus, representations by a vendor as to the title he holds at the time of the sale, which he believes to be true, but which are in fact untrue, will not authorize a rescission of the contract."

See also 55 Am Jur 542-43, Vendor and Purchaser, § 70.

Thus, in this case, since there was testimony that Angell's wife had authorized a listing of the property for sale and since testimony was offered that she would have joined in a deed for conveyance of the property, it follows that Davis had not and would not have suffered damage as a result of the alleged misrepresentation of title.

We have read and considered *Ford v. White,* 179 Or 490, 172 P2d 822 (1946), and the other Oregon cases cited by plaintiffs. Suffice to say that some in-

volved similar facts and none state a contrary rule or require a different result.

■ It remains to dispose of the contention on behalf of Dr. Davis that he was required to "act promptly to disaffirm", at the risk of otherwise being held to have affirmed the transaction, as well as the contention that he was not required to "assume the risk" whether Mrs. Angell would sign a deed and was "not required to buy a lawsuit".

On the contrary, it is clear that had Dr. Davis promptly given notice of the defect of title which he later claimed, his right to rescind would not have been impaired in any way. Similarly, while it is true that Dr. Davis was not required to "assume the risk" or to "buy a lawsuit", had he proceeded in such a manner he would have either eliminated any such risk and potential lawsuit upon the correction of such a defect, or his right to rescind and demand the return of his earnest money payment would then have been properly perfected.

It follows, for all of these reasons, that the trial court erred in holding that plaintiffs were entitled to rescind the contract and to the return of the $5,000 earnest money payment.

Reversed.