Argued and submitted January 19, affirmed April 27, 1983

# SETH,
*Appellant,*
*v.*
# WILSON et al,
*Respondents.*

(122,744; CA A25535)

662 P2d 745

Jossi Davidson, Silverton, argued the cause and filed the briefs for appellant.

Asa Lewelling, Salem, argued the cause and filed the brief for respondents Wallace E. Wilson and Virgil J. Weber.

Paul J. De Muniz, Salem, argued the cause for respondents Ted Morrison and Jim Morrison, dba Ted Morrison Real Estate. With him on the brief was Garrett, Seideman, Hemann, Robertson & De Muniz, P.C., Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

NEWMAN, J.

Van Hoomissen, J., dissenting.

## NEWMAN, J.

Plaintiff appeals from a judgment in favor of defendants. Plaintiff brought an action against defendants Wilson and Weber (sellers) for breach of a land sale contract and of a deed covenant against encumbrances and against defendants Morrison (realtors) for fraudulent and negligent misrepresentations. Plaintiff assigns as error that the court granted defendants' motion for summary judgment.[1] We affirm.

Plaintiff's amended complaint in substance alleged:

(1) Defendant sellers sold lot 11 to plaintiff and (a) breached a promise in the contract of sale that lot 11 consisted of four separate legally partitioned parcels of land that could each be independently developed for residential use; and (b) breached the covenant against encumbrances in a warranty deed given to plaintiff at closing to a portion of lot 11 because the portion conveyed was "illegally partitioned" and because two functioning mobile home sites on the portion conveyed were not recognized as "legal."

(2) Defendant realtors[2] held themselves out to plaintiff as having particular expertise in real estate and fraudulently and negligently misrepresented to plaintiff that the property included four legally partitioned parcels suitable for independent development and fraudulently represented that "the two mobile homes on the property were installed legally in full compliance with all governmental regulations." In connection with the claim of fraudulent misrepresentations, plaintiff alleged that defendant realtors listed lot 11 as agents for defendant sellers.

The undisputed facts from the supporting depositions and affidavits showed the following:

---

[1] Plaintiff also moved for partial summary judgment on the issue of liability. The court denied that motion.

[2] Although the allegations of the amended complaint identified as count 2 (fraudulent misrepresentation) and count 3 (negligent misrepresentation) were pleaded against sellers as well as realtors, plaintiff thereafter abandoned them against sellers. Even if those counts had been maintained against sellers, the result is the same.

On May 1, 1978, defendant sellers listed lot 11 for sale with defendant realtors, who were real estate brokers. Sandra Brandvold, an employe of the realtors, had been working with plaintiff "looking for a farm" for him. She called plaintiff and showed him the ten-acre property. She obtained a listing packet from Pioneer National Title Insurance Company that showed lot 11 in four tax lots, which came to be known as parcels 1, 2, 3 and 4. This was the source of the reference to "parcels."

The earnest money agreement dated June 15, 1978, described the property by street address and contained a drawing which showed lot 11 in four parcels: Parcels 1, 2, 3 and 4. The drawing was made by Brandvold but was taken from a drawing originally made by plaintiff. Plaintiff wanted the property to be described by parcels, and to have the price allocated among the parcels, to facilitate release to him by deed of portions of the property before the full contract balance was paid so that he could finance and build a home on the deeded portion. Plaintiff told defendants that he wished to finance and build a house on the portion of the property known as parcel 3, which was to be deeded at closing. It had available water and sewer and was landscaped. The earnest money receipt gave acreages for each parcel and allocated a portion of the total price of $71,500 to each parcel.

Two mobile homes were located on lot 11, one on parcel 3 and one on parcel 4. One was owned by defendant sellers, the other by third persons renting the parcel from defendant sellers. Each mobile home could be removed on 30 days prior written notice.

The contract of sale, dated June 21, 1978, provided that lot 11 was a "certain tract of land with improvements situated at 2798 Nehalem Drive, S., Marion County, Oregon, and consisting of four parcels of land more particularly described as follows," identified the parcels as parcels 1, 2, 3 and 4, and described each parcel by metes and bounds. Sellers' attorney obtained the metes and bounds descriptions of each parcel from Pioneer National Title Insurance Co. and inserted them in the contract. Sellers were to convey parcels 3 and 4 at closing and parcels 1 and 2 as defendant paid off the balance allocated to each. The warranty deed described the portion to be conveyed by a

single metes and bounds description and not as parcels 3 and 4. In the deed, sellers conveyed that property "free and clear of all encumbrances" and covenanted that they would "warrant and forever defend the said premises and every part and parcel thereof against the lawful claims and demands of all persons whomsoever."

Neither the earnest money receipt, the contract nor the deed stated that the parcels were legally partitioned or could be developed for independent residential use or even mentioned the mobile homes. All the parties knew that the mobile homes were not sold with the property.

Lot 11 was not legally partitioned, although the zoning (residential-agricultural) would allow lot 11, if legally partitioned, to be developed as four residential sites. Marion County considered the entire tract as one parcel. None of the defendants, or anyone on their behalf, discussed the property with the Marion County Planning Commission before sale. Plaintiff never requested any of the defendants to contact the Marion County Planning Commission.

In August, 1979, 15 months after closing, plaintiff for the first time contacted the Marion County building department and asked for a building permit to build a home on the portion of Lot 11 described as parcel 3. He was advised that no building permit would be issued unless both mobile homes on Lot 11 were removed and that two mobile homes were not permitted on Lot 11. Plaintiff could have obtained a building permit and built a home on lot 11 if the mobile homes were removed.

The court did not err in granting defendants' motions for summary judgment. Even when the evidence is viewed in a light most favorable to plaintiff as the party opposing the motion for summary judgment, *Seeborg v. General Motors Corporation,* 284 Or 695, 588 P2d 1100 (1978), plaintiff failed to raise any genuine issue of material fact on the claims presented.

As to the alleged breach of contract, there is no genuine issue of material fact that defendant sellers did not promise to sell to plaintiff "four separate parcels of land, each of which was * * * to be a legally partitioned

parcel that could be independently developed for any lawful use, including the construction of private residences." Neither the contract of sale nor the earnest money receipt so provides. The contract describes the tract of land by street address and as four parcels, each described by metes and bounds. The earnest money receipt lacks the metes and bounds description.

■ ■    Construction of a contract is a matter of law, and the court determines if the contract is ambiguous. *Timberline Equip. v. St. Paul Fire and Mar. Ins.,* 281 Or 639, 576 P2d 1244 (1978); *Bartlam v. Tikka,* 50 Or App 217, 622 P2d 1133, *rev den* 290 Or 853 (1981). We find the contract here is not ambiguous. ORS 42.250 creates a presumption that words have been used in their primary and accepted sense. The common meaning of parcel is simply a part or portion of land. *See* Webster's Third New International Dictionary 1930 (unabridged 1971). There is no evidence that the parties used or understood the term "parcel" to mean "legally partitioned parcel" or that by reference to four "parcels," they meant four buildable lots. If the parties had intended the word "parcel" to have a special meaning, the contract should have so provided.

■    The reference to parcels with or without metes and bounds descriptions is not a promise, and does not imply a promise, that each or any of the parcels described is "legally partitioned" or "could be independently developed for any lawful use, including the construction of private residences" or, contrary to the dissent's suggestion, that they were "four buildable lots." If plaintiff intended to develop the property as a subdivision, he did not advise any of the defendants at or before the contract was executed that this was his hope or intention. Brandvold testified at her deposition that plaintiff wanted to buy a farm out in the country on which to build a home. Plaintiff's deposition confirms that he wanted to use lot 11 for a farm:

"Q    And why did you want a small farm?

"A    Just a lifetime dream.

"Q    I see.

"Q    Did you have some plans to grow nursery stock, or something like that?

"A  I had no plans, other than that I wanted a rural piece of property, with a creek and a pond and various things I just dreamt about for a long time.

"Q  Going to have a horse and some cows?

"A  Sure; be a gentlemen farmer.

"Q  All right. Who showed you this listing? I assume it was somebody at Morrison's.

"A  It was shown to me by Sandy Brandvold.

"* * * * *

"Q  What did she tell you about the property?

"A  She gave me the listing, and we went out and looked at the property, and it looked like what I wanted, and I think at the time we immediately submitted an offer."

Plaintiff did not testify that he told any of the defendants he wanted "four legally partitioned lots" or "four buildable lots."[3]

---

[3] At plaintiff's deposition, counsel for sellers tried to find out from plaintiff if he ever told any of the defendants that he wanted "four legally partitioned lots" or "four buildable lots":

"Q  Well, I don't understand exactly why, when it became apparent to you, from what they said, that if you removed the two mobile homes, you could treat it as a one 10-acre parcel, which is what you wanted in the beginning, if I understand you.

"A  I wanted the best use I could get out of the land, and I bought a piece of ground on a short-term contract that ran out in eight years.

"The best use of that land might have been subdivision. All I wanted was a piece of ground that I could utilize any way I saw fit, within the perimeters of the deal that was negotiated.

"Q  Well, did you ever tell either Mr. Weber or Mr. Wilson that you wanted to subdivide this property?

"A  My impression —

"Q  Answer that question, first.

"A  Not technically, did I ask them to subdivide it, because it was implied it was already subdivided, to me.

"Q  Did you ever tell them that you wanted to subdivide it?

"A  By asking for the release of one lot, I asked for a subdivision of the land, yes. I asked for release of the southwest parcel.

"* * * * *

"Q  At any time, did you tell anyone from Ted Morrison Real Estate that you wanted to subdivide the property?

█     Plaintiffs may have had undisclosed hopes or secret intentions that were not realized, but defendants, unaware of such hopes or secret intentions, could rely on objective manifestations of intent. *Kabil Development Corp. v. Mignot,* 279 Or 151, 566 P2d 505 (1977); *Kitzke v. Turnidge,* 209 Or 563, 307 P2d 522 (1957). Plaintiff's undisclosed intentions do not create a question of fact as to the meaning of the contract. *Ross Bros. Const. v. Trans. Comm.,* 59 Or App 374, 650 P2d 1080 (1982).

█     There is no genuine issue of material fact that defendant sellers did not breach the covenant against encumbrances in the warranty deed. The warranty deed did not even describe the property as parcels 3 and 4, but only as a single parcel by a single metes and bounds description. The property conveyed was not "encumbered" within the meaning of the covenant against encumbrances. An "encumbrance," as the term is used in a grantor's covenant, generally means "any right to or interest in the land, subsisting in a third person, to the diminution of the value of the land, though consistent with the passing of the fee by conveyance." *Leach v. Gunnarson,* 290 Or 31, 619 P2d 263 (1980); *Ford v. White,* 179 Or 490, 172 P2d 822 (1946); *Winn v. Taylor,* 98 Or 556, 190 P 342, 194 P 857 (1921). The lack of partitioning is not an adverse right in favor of a third person and does not "curtail the full and exclusive use of the fee title in the grantee." *Winn v. Taylor, supra,* 98 Or at 565. Plaintiff's property is not yet legally partitioned, but his right to have lot 11 partitioned has not been restricted.

---

"A Yes, very specifically, when I requested four parcels of ground to be released to me upon paid — upon preagreed amounts, as determined in the presence of these gentlemen; that I wanted parcel one, two, three and four released in that order, upon the payment of specific funds of money.

"Q And did you tell these people that you wanted to build on each parcel?

"A I told them I wanted four parcels of ground deeded to me separately, and at that point it was my understanding the piece of ground couldn't be deeded to you unless it was a legal piece of ground.

"Q That wasn't my question.

"My question was, did you tell them you wanted to build on each of these separate parcels.

"A (Pausing) I can't recollect that I told anybody that I was going to build. I don't recollect that I went into a great deal of my future plans with anybody when I ever bought a piece of property."

*See also Hall v. Risley and Heikkila,* 188 Or 69, 213 P2d 818 (1950), (in which it was held that building and zoning regulations were not "encumbrances"); *see also* Annot. 39 ALR3d 362 (1971). That lot 11 was not partitioned under the Marion County ordinances and two mobile home sites on lot 11 were not "established in conformity with all applicable land use regulations" or "recognized as a legal and proper use of the property conveyed" does not create an "encumbrance" on lot 11.

■ As to realtors, there is no genuine issue of material fact that they did not represent "that the property included four legally partitioned parcels suitable for independent development" or that "the two mobile homes on the property were installed legally in full compliance with all applicable governmental regulations." The record does not support an inference that the realtors made such representations, expressly or by implication, either intentionally or negligently. It is not necessary, therefore, to determine whether there exists any genuine issue of material fact as to any of the other elements of intentional or negligent misrepresentation.

■ Plaintiff alleged that realtors were negligent in "failing to inform plaintiff that the property was a solitary legal unit while knowing or having reason to know that the property reasonably appeared to plaintiff to consist of four separate and legally partitioned parcels," that they held themselves out "as having particular expertise in the area of real estate," that plaintiff relied on that expertise throughout his dealings with them and that, "as a direct and proximate result of defendants' negligence the property purchased by plaintiff was less valuable than it would have been if defendants' representations were true * * *." We read the foregoing to allege that by failing to disclose to plaintiff that lot 11 was a "solitary legal unit," defendant realtors negligently misrepresented that the property was legally partitioned. There is no genuine issue of fact but that they made no such representation.[4]

---

[4] On appeal plaintiff argues an alternative theory that realtors "acted as agent for Seth (plaintiff) in his own right" and owed him the duty a broker owes his client as articulated in *Prall v. Gooden et ux,* 226 Or 554, 561, 360 P2d 759 (1961). In *Prall* the court stated:

Affirmed.

**VAN HOOMISSEN, J.,** dissenting.

This is an action for damages. Plaintiff alleged a breach of contract and of a covenant against encumbrances against sellers and fraudulent and negligent misrepresentation against realtors. Viewing the record in the light most favorable to plaintiff, *Seeborg v. General Motors Corporation,* 284 Or 695, 699, 588 P2d 1100 (1978), I would hold that there are genuine issues of material fact that should have been submitted to the trier of fact.

The record presents genuine issues of material fact. First, did sellers contract to convey four separate, buildable lots? Second, did the realtors act as agents for both plaintiff and sellers? It is undisputed that (1) realtors' employe Brandvold gave plaintiff a document from a title company that showed Lot 11, a 10-acre tract, was divided into four separate tax lots, (2) plaintiff thereafter made a drawing that showed Lot 11 in four separate lots, (3) Brandvold subsequently made a similar drawing that was contained in the earnest money agreement, (4) the earnest money agreement gave the acreage for each "lot," and it allocated a portion of the total purchase price to each "lot," and (5) the contract of sale provided that Lot 11 consisted of four separate parcels of land, each of which was individually described by metes and bounds. On the basis of this uncontradicted evidence, I find incomprehensible the majority's conclusion that there is "no evidence" that sellers promised to sell plaintiff four separate, buildable lots.

The majority holds that the contract is not ambiguous. I strongly disagree. Certainly the assertion by the majority that there is "no evidence that the parties used or understood the term 'parcel' in a technical or otherwise

"It also must be kept in mind that a real estate broker stands in a fiduciary relationship with his customer or client and is thus bound to protect his clients' interests. He must, therefore, make a full, fair and understandable explanation to the client before having him sign any contracts * * *."

Here plaintiff is not arguing what he pleaded — that defendant realtors fraudulently or carelessly misrepresented — but rather that realtors were plaintiff's agents and should have made a specific disclosure to him that lot 11 was *not* legally partitioned. Plaintiff did not plead such a fiduciary relationship, and we need not consider this argument further.

peculiar sense" is not supported by the record. On the contrary, the record would support a finding that plaintiff believed he was purchasing four separate, buildable lots.

The majority states:

> "The reference to parcels with or without metes and bounds descriptions is not a promise, and does not imply a promise, that each or any of the parcels described is 'legally partitioned' or 'could be independently developed for any lawful use, including the construction of private residences.'" 62 Or App at 814.

The majority cites no authority for this proposition, one that in my view is dubious. Whether the parties' reference to "parcels" was an implicit promise to convey four separate, buildable lots is certainly an issue of material fact.

The majority finds it significant that plaintiff did not advise defendants of his intention to develop the property. In the context of a summary judgment that is irrelevant. The issue is whether the parties contracted to buy and to sell four separate, buildable lots. Plaintiff's deposition testimony clearly demonstrates that "within the perimeters of the deal that was negotiated," he thought that Lot 11 was already divided into four legally separate parcels, see 62 Or App 820, n 3.

I also disagree with the majority that there is no evidence that realtors represented that Lot 11 consisted of four separate, buildable lots or that the two mobile homes on Lot 11 were there legally. On this record, the trier of fact could find that realtors failed to exercise reasonable care under the circumstances. Realtors were representing plaintiff as well as sellers. There is an issue of material fact about the duty of realtors under the circumstances affirmatively to inform plaintiff about the true character of the land and the status of the trailers when it was, or at least should have been, obvious to a broker that plaintiff thought he was buying four separate, buildable lots and that the trailers were legally on the land.

I dissent.