Argued and submitted November 18, 1983, reversed and remanded March 21, 1984

MARSHALL et al,
*Appellants,*

*v.*

WATTLES et al,
*Respondents.*

(82-979-NJ-1; CA A27358)

678 P2d 762

Carlyle F. Stout, III, Medford, argued the cause and filed the brief for appellants.

Robert R. Dickey, Jr., Medford, argued the cause for respondents. On the brief was Manville M. Heisel, Medford.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

BUTTLER, P. J.

### BUTTLER, P. J.

Plaintiffs, assignees of a vendor's interest in a land sale contract, brought this action for strict foreclosure, contending that defendants Wattles, vendees, violated covenants of the contract by granting an easement to defendant Jacks. The trial court granted both Wattles' and Jacks' motions for summary judgment, and plaintiffs appeal. We reverse and remand.

In August, 1971, Lauren Hardy purchased a parcel of real estate known as the Sunnyside Tavern and took possession in November, 1971. During the mid-1970s, Hardy and defendant Jacks had disputes concerning access from Jacks' property to Highway 238 through the Sunnyside property. In January, 1978, Jacks filed a quiet title action against Hardy to establish a prescriptive easement over the property.

In January, 1979, Hardy sold the Sunnyside property to defendants Wattles under a contract that provided that the property was sold subject to specifically described encumbrances, including "Suit to quiet title to easement filed January 20, 1978, Jackson County Circuit Court, as Document No. 78-178-E-1, R. W. Jacks, et ux, Plaintiff, vs. Lauren D. Hardy, Defendant, which suit is now pending." The agreement recited that Hardy retained legal title to the property and a security interest in the equipment and fixtures. In May, 1980, Hardy assigned his vendor's interest in the contract to plaintiffs, who recorded the assignment on May 13, 1980.

On June 30, 1980, Hardy, at the request of Wattles, allowed his attorney to withdraw from the pending Jacks' litigation in order to allow Wattles' attorney to handle the matter. In an affidavit filed in opposition to the motion for summary judgment, Hardy stated that for some months after the suit was filed Jacks refrained from trespassing on the property and that it was his understanding that all that remained was a formal dismissal of the action, which Hardy thought Jacks had abandoned. Hardy also stated that he expressly told Wattles not to yield to Jacks regarding the easement and not to settle the dispute without his consent.

On September 15, 1980, Wattles "settled" the lawsuit with Jacks by granting her an easement 50 feet in width for ingress and egress across the easterly portion of the Sunnyside

property, for which Jacks paid $5,000. On September 17, 1980, a stipulation and order of dismissal with prejudice were signed by Wattles' and Jacks' attorneys. Although Hardy remained as the only defendant in the action, neither he nor plaintiffs were advised of the "settlement." Plaintiffs first learned of the easement in the spring of 1981.

Sometime after the spring of 1981, defendants removed a fence separating the westerly boundary of Jacks' property from the Sunnyside property, moved approximately 100 cubic yards of fill dirt, created an embankment adjacent to a rental house on the property and built a paved road to allow access from Jacks' property to Highway 238. Plaintiffs submitted an affidavit indicating that it would cost $3,840 to restore the property to its original condition and the affidavit of an independent fee appraiser, who stated that, in his opinion, the fair market value of the Sunnyside property was decreased in value by $11,500 by virtue of the existence of the easement. Defendants submitted no counter-affidavits.

The underlying question is whether there is a genuine issue of material fact as to whether the Wattles were in default under the land sale contract by virtue of having granted an easement across the property to Jacks. If that easement constituted an encumbrance, or if the Wattles' treatment of the property after granting the easement constituted waste, the Wattles would be in default, unless they had authority from Hardy to grant the easement. Because the trial court, in granting defendants' motions for summary judgment, ruled, as a matter of law, that when Hardy sold the property subject to the pending litigation and agreed to the substitution of attorneys, the Wattles had authority to settle the lawsuit by granting the easement, we consider that question first.

At the outset, we think it is clear that Hardy's selling the property subject to the pending litigation did nothing more than advise the Wattles that they were purchasing the property subject to whatever might be the outcome of that lawsuit. If Jacks prevailed and obtained an easement, the Wattles would have no claim against Hardy, but would take the property subject to that easement. Presumably, it was for that reason that they wanted their attorney involved in the case to protect their interests. By the substitution of attorneys, however, the Wattles' attorney became the attorney of

record for Hardy, the only defendant, who had an interest in defending against Jacks' claim for a prescriptive easement to protect his vendor's lien in the property.

 We have no doubt that it would have been permissible for the Wattles to have settled the lawsuit by paying Jacks to dismiss it. However, selling Jacks an easement over the property in which Hardy retained an interest is a substantially different matter and, in the absence of some agreement other than what is contained in the land sale contract, is a transaction they were without authority to enter into. Defendants contend, however, that plaintiffs are equitably estopped from asserting that they violated the land sale contract by granting the easement because of Hardy's acceding to the substitution of attorneys in the lawsuit. In *Seguin et al. v. Maloney-Chambers,* 198 Or 272, 287, 253 P2d 252, 256 P2d 514 (1953), the court stated:

> " 'This doctrine of equitable estoppel or estoppel *in pais* is that a person may be precluded by his act or conduct, or silence when it was his duty to speak, from asserting a right which he otherwise would have had. The one invoking such doctrine must show that he was entitled to rely upon such conduct, action or silence, that he acted thereupon and would be prejudiced if the doctrine of estoppel were not applied.'
> * * *" (Citation omitted.)

The Wattles apparently contend that they were entitled to rely on Hardy's conduct in selling the property subject to the pending litigation and in his subsequent agreement to permit a substitution of attorneys in concluding that they had authority to settle the lawsuit by selling Jacks an easement. Although defendants acknowledge Hardy's statements to the contrary, as set forth in his affidavits, they contend that those statements are inadmissible under the Statute of Frauds, ORS 41.580, and the Parol Evidence Rule. ORS 41.740.

ORS 41.580 provides, in pertinent part:

> "In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by his lawfully authorized agent; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases prescribed by law:
> "* * * * *

"(5) An agreement * * * for the sale of real property or of any interest therein."

Even conceding that the statements were introduced as evidence of an *agreement* between Hardy and Wattles, the agreement was not for the sale of an interest in real property; rather, it was that the Wattles were not to yield to Jacks' demands. The agreement, if any, did not involve the transfer of real property, but rather the authority to settle a lawsuit. The fact that the action involved real property does not bring the 'agreement within the statute. *See Caldwell et ux v. Wells,* 228 Or 389, 396, 365 P2d 505 (1961).

We find it odd that the Wattles rely on the Parol Evidence Rule, ORS 41.740, to exclude Hardy's statements. That rule provides:

"When the terms of an agreement have been reduced to writing by the parties, it is to be considered as containing all those terms, and therefore there can be, between the parties and their representatives or successors in interest, no evidence of the terms of the agreement, other than the contents of the writing, except where a mistake or imperfection of the writing is put in issue by the pleadings or where the validity of the agreement is the fact in dispute. * * *"

Here, the Wattles are relying on an agreement other than the contents of the written agreement. Hardy's statements as to what that "agreement" was, or what was said at the time he agreed to permit a substitution of attorneys, cannot be excluded when the Wattles assert the right to rely on that event or agreement. We thus conclude that Hardy's statements are admissible and, because they raise a factual issue as to whether the Wattles were entitled to rely on Hardy's conduct in concluding that they had authority to settle the suit by selling an easement to Jacks, summary judgment on that issue was error.

■ We turn now to the question of whether the Wattles' selling an easement constituted a breach of their covenant to keep the property free of encumbrances.[1] In *Leach v.*

---

[1] The land sale contract provides, in part:

"The Purchasers covenant and agree to pay promptly for all improvements made on the above described real property and covenant and agree not to allow any liens or encumbrances to attach thereto or to become a lien upon said

*Gunnarson,* 290 Or 31, 619 P2d 263 (1980), the court defined "encumbrance" in the context of a grantor's covenant that the premises are free and clear of encumbrances, as:

> "* * * 'any right to or interest in the land, subsisting in a third person, to the diminution of the value of the land, though consistent with the passing of the fee by conveyance.' * * *" 290 Or at 39.

In *Leach,* the court concluded that the issue of whether an irrevocable license resulted in diminution of the value of land so as to constitute an encumbrance had been properly submitted to the jury. Based on that authority, plaintiffs contend that the only issue remaining is whether the easement granted by Wattles resulted in diminution of the value of the Sunnyside property. The affidavits submitted by plaintiffs state that it did.

However, the Wattles attempt to avoid that problem by pointing out that all that they could convey was an easement over the property to the extent of their interest as contract vendees. Accordingly, they contend that the vendors' interest is not impaired, because the easement would be extinguished if the vendors successfully declare a forfeiture, *Elsasser v. Wilcox,* 286 Or 775, 596 P2d 974 (1979), or extinguish the vendees' interest through strict foreclosure proceedings. Although it is true that the Wattles could convey no greater interest than they had, the easement they granted is not, on its face, so limited. If it would require a lawsuit to extinguish the easement, granting it would constitute an act of default under the contract.

Although plaintiffs contend that whether the easement constitutes an encumbrance depends on whether its existence diminishes the value of the land, a question of fact, all that we need to say now is that the question was not ripe for summary judgment. We cannot say as a matter of law that the

---

premises, and to satisfy all such liens promptly, and save the Vendor harmless from any claims, charges, liens, encumbrances or otherwise arising by reason of the construction of improvements upon the above described real property."

According to 7 Thompson, *Commentaries on the Modern Law of Real Property* 284 (1962):

> "* * * [I]t seems that every easement except that of a public highway, in some states, is an encumbrance within the covenant against encumbrances."

easement is not an encumbrance.[2] Because we conclude that there is a material issue of fact as to whether the Wattles were authorized to sell the easement to Jacks, summary judgment was improperly granted.

Reversed and remanded.

---

[2] The court in *Leach v. Gunnarson, supra,* stated:

"We recognize that diminution in value may not always be a necessary element of plaintiff's proof of an encumbrance where plaintiff seeks rescission rather than damages. There may be instances where the encumbrance has a substantial effect on the buyer's use of the land so he would not have purchased it had he known the condition existed, although the condition did not, in a general sense, diminish the market value of the land." 290 Or at 40 n 3.

Given that comment, it may be that the easement constitutes an encumbrance *per se,* regardless of whether the value of the land is diminished.